## HELENA WATER WORKS COMPANY *v.* HELENA.

### APPEAL FROM THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 27.   Argued October 28, 1904.—Decided November 28, 1904.

Nothing is to be taken against the public by implication; under the constitution and laws of Montana a grant by a municipality to a water works company of the right to erect and maintain water works, which expressly declares that it is not exclusive, does not raise an implied contract that the grantor will not provide its own water supply during the term of the franchise even though by accepting the terms of the franchise the grantee expressly agrees to furnish water to all the inhabitants of the city who may desire to contract for the same during that period, and the erection of its own plant by the city does not, by reason of the depreciation in value which would result therefrom to the grantee's property, violate a contract obligation or amount to a taking of property without just compensation or due process of law within the meaning of the Federal Constitution.

THIS case was begun by a bill filed in the Circuit Court of the United States by the Helena Water Works Company, successor to the Helena Consolidated Water Company, to restrain the City of Helena from erecting, purchasing or acquiring a water works system for said city, and from acquiring water for such purpose, except it purchase the plant of the complainant company, and from incurring any indebtedness or expenditure of money for such purpose.

The rights in controversy are alleged to result from a contract made by the passage and acceptance by the company of a certain ordinance, number 248, passed and approved in January, 1890.

It is also alleged that the Helena Consolidated Water Company, predecessor of the complainant company, complied with all the terms of the ordinance, and expended large sums of money in erecting and maintaining the plant for supplying water to the inhabitants of the said City of Helena.

It is averred that the said city has adopted certain ordinances and taken certain proceedings to acquire and build a water

system of its own, and that said ordinances and proceedings are in violation of the contract rights of the complainant company, guaranteed by section 11 of article 3 of the Constitution of the State of Montana, and section 10 of article 1 of the Constitution of the United States, and that the proceedings of the city in this behalf will amount to taking the property of the complainant company without just compensation, in violation of section 14 of article 3 of the Constitution of the State of Montana, and that its rights and property will be taken without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States.

It is further averred that the taxation necessary for the construction of the city plant is in excess of any that can be lawfully levied for such purpose.

The case was tried upon an agreed statement of facts. In the Circuit Court a decision was rendered in favor of the Water Works Company. Upon appeal to the Circuit Court of Appeals that court reversed the decision of the Circuit Court, and remanded the case with instructions to dismiss the bill. 122 Fed: Rep. 1; 58 C. C. A. 381.

The terms of the ordinance relied upon and so much of the agreed statement of facts as is necessary to a determination of the case sufficiently appear in the opinion.

*Mr. M. S. Gunn,* with whom *Mr. B. Platt Carpenter* and *Mr. Stephen Carpenter* were on the brief, for appellant:

The city has no right to engage in the business of supplying water in competition with appellant. *Walla Walla Water Case,* 172 U. S. 1; *Water Co.* v. *Vicksburg,* 185 U. S. 65. There was an implied contract not to do so.

In the exercise of its private powers a city is regarded the same as a private corporation. Dillon, Munic. Corp. § 66; *Ill. Trust & Savings Bank* v. *Arkansas City,* 76 Fed. Rep. 271; *Walla Walla Water Case,* 172 U. S. 1; *People* v. *Detroit,* 28 Michigan, 228; *Gas Company* v. *San Francisco,* 9 California, 453; *Bailey* v. *New York,* 3 Hill, 531.

A city in providing its inhabitants with a supply of water exercises its private powers—sometimes termed its business or proprietary powers. *Little Falls Elec. & W. Co.* v. *Little Falls,* 102 Fed. Rep. 663; *Baily* v. *Philadelphia,* 39 L. R. A. 837; *Western Savings Fund Society* v. *Philadelphia,* 72 Am. Dec. 730; *Lynch* v. *City of Springfield,* 54 N. E. Rep. 871; *Pike's Peak Power Co.* v. *Colorado Springs,* 105 Fed. Rep. 1.

The whole investment is the private property of the city, as much so as the lands and houses belonging to it. *Lynch* v. *Springfield,* 54 N. E. Rep. 871; *Aldrich* v. *Tripp,* 23 Am. Rep. 434; *White* v. *Meadville,* 34 L. R. A. 567.

Although a State is a party to it, a contract will be construed according to the principles which regulate contracts. *Huidekoper's Lessee* v. *Douglass,* 3 Cranch, 1.

A contract resulted from the acceptance of the franchise and the company is only bound to continue to furnish water by virtue of that contract, otherwise it could remove its mains and abandon its plant.

If, however, there is no provision obligating the company to operate the plant or road, the grant amounts to a mere license. *State ex rel Knight* v. *H. P. & L. Co.,* 22 Montana, 391; *President &c.* v. *Canandaigua,* 96 Fed. Rep. 449; *San Antonio Street Ry. Co.* v. *State,* 35 L. R. A. 662; *State* v. *Helena Power & Light Co.,* 22 Montana, 391; *York & N. Midland Ry. Co.* v. *Queen,* 1 E. & B. 856; *Nor. Pac. R. R. Co.* v. *Washington,* 142 U. S. 492; *Baily* v. *Philadelphia,* 39 L. R. A. 837.

The contract was mutual and the term was for the life of the franchise until 1910.

The contract to supply all of the inhabitants of the city with water precludes the city from becoming a competitor.

The fact that a city cannot establish its own plant except by acquiring the Water Company's plant does not depend on the grant being exclusive. *Walla Walla Water Case,* 172 U. S. 1.

Provided it may incur the indebtedness therefor the city may acquire the Water Company's plant although the original

ordinance does not provide for it. *Long Island Water Supply Co.* v. *Brooklyn,* 166 U. S. 685; *Bienville Water Supply Co.* v. *Mobile,* 95 Fed. Rep. 539; *S. C.,* 175 U. S. 109; *Water Works Co.* v. *Skaneateles,* 184 U. S. 354; *Joplin* v. *S. W. Missouri Light Co.,* 191 U. S. 150. In all contracts the intention of the parties when ascertained will control. *Water Works Co.* v. *Westerly,* 75 Fed. Rep. 181; *White* v. *Meadville,* 35 Atl. Rep. 695. What is implied will be as much a part of the contract as what was expressed. *United States* v. *Babbit,* 1 Black, 55; *Manistee Iron Works* v. *Shores Lumber Co.,* 65 N. W. Rep. 863; *Canal Co.* v. *Coal Co.,* 8 Wall. 288; *Churchward* v. *Reg.,* L. R. 1 Q. B. 195; *Coghlan* v. *Stetson,* 19 Fed. Rep. 727; *St. Louis Co.* v. *Tierney,* 5 Colorado, 582.

Although the city of Helena can grant a franchise to another corporation it cannot erect and maintain its own plant.

*Mr. Edward Horsky,* with whom *Mr. E. C. Day* and *Mr. R. Lee Word* were on the brief, for appellee:

There being no obligation in the franchise to take and purchase the water, there could be no damage or injury in a legal or equitable sense, and the city should not on that account be enjoined from bringing in and maintaining its own water plant. No element of estoppel obtains to prevent appellee from installing its own plant as it proposes to do and is doing, in accordance with the Constitution and laws of Montana.

There being no express surrender of the public right of appellee to put in its own plant, but on the contrary, language used which expressly reserves it, no obligation can be implied by which this right has passed and appellee compelled to desist from bringing in its own plant. *The Skaneateles Case,* 184 U. S. 354; Sedgwick, Stat. and Const. Law, 338; *Charles River Bridge Co.* v. *Warren Bridge Co.,* 11 Peters, 507; *Rice* v. *Railroad Co.,* 1 Black, 358, 380; *Leavenworth &c. Ry. Co.* v. *United States,* 92 U. S. 733; *Slidell* v. *Grandjean,* 111 U. S. 412, 437; *Barden* v. *Nor. Pac R. R. Co.,* 45 Fed. Rep. 609; *S. C.,* 154 U. S. 288.

The law secures to the city, as we have seen, the right to put in its own plant, and has not granted it away. The mutual and depending conditions under the ordinance are, the right to use the streets and alleys to maintain the system and the right to sell the city and inhabitants water, provided they desire to purchase it, at specified rates. It expressly also reserves the right to the occupancy of the streets, avenues, alleys and public grounds with water mains and pipes and denies the exclusive right to sell and distribute water to the city and its inhabitants. *Wright* v. *Nagle*, 101 U. S. 791; *Walla Walla Water Case*, 172 U. S. 1, 18; *Bienville Water Co.* v. *Mobile*, 95 Fed. Rep. 539, 543; *S. C.*, 175 U. S. 110; *Iron Mountain R. Co.* v. *Memphis*, 96 Fed. Rep. 113; *University* v. *Canandaigua*, 96 Fed. Rep. 449, 452; *Electric & Water Co.* v. *Little Falls*, 102 Fed. Rep. 667; *Skaneateles Water Case*, 161 U. S. 154; *North Springs Water Co.* v. *Tacoma*, 47 L. R. A. 214; *Thompson-Houston Electric Co.* v. *Newton*, 42 Fed. Rep. 723; *State* v. *Hamilton*, 47 Ohio St. 52; *Gas L. & Coke Co.* v. *Hamilton*, 146 U. S. 258; *Long* v. *Duluth*, 49 Minnesota, 280; *Water Works Co.* v. *Westerly*, 80 Fed. Rep. 611.

When the city granted the franchise contained in Ordinance No. 248, it acted as the agent of the State in granting a franchise vested in the State. *New Orleans W. W. Co.* v. *Rivers*, 115 U. S. 680, 681.

In the construction of all such grants and franchises the rule is well settled that the grant or privilege must be clearly conferred and that all doubts and implications will be resolved against the grant or privilege claimed and in favor of the grantor. *Bartholomew* v. *City of Austin*, 85 Fed. Rep. 359, and cases cited; *Stein* v. *Supply Co.*, 141 U. S. 67, 80; *Detroit Citizens' Street Ry. Co.* v. *Detroit R. R. Co.*, 171 U. S. 48; *Water Co.* v. *Freeport*, 180 U. S. 587.

Mr. Justice Day, after making the foregoing statement, delivered the opinion of the court.

As the ordinance under consideration contains no express

stipulation that the city shall not build a plant of its own to supply water for public and private purposes, and the grant is expressly declared not to be exclusive of the right to contract with another company, this case, unless it can be distinguished, is ruled by recent decisions of this court. *Long Island Water Supply Company* v. *Brooklyn*, 166 U. S. 685, 696; *City of Joplin* v. *Southwest Missouri Light Co.*, 191 U. S 150; *Skaneateles Water Works Co.* v. *Skaneateles*, 184 U. S. 354. These cases hold that the grant of the franchise does not of itself raise an implied contract that the grantor will not do any act to interfere with the rights granted to the water works company, and that, in the absence of the grant of an exclusive privilege, none will be implied against the public, but must arise, if at all, from some specific contract binding upon the municipality.

As stated by appellant's counsel: "The position taken by appellants is, that by Ordinance 248 the city has precluded itself from engaging in the commercial business of furnishing water to its inhabitants. We maintain that by the contract contained in this ordinance the Helena Consolidated Water Company [predecessor of appellant,] for itself, its successors and assigns, expressly agreed to furnish water to all of the inhabitants of the city during the term of twenty years, and that by reason of the contractual obligation thus assumed by the company there is the implied promise or undertaking on the part of the city that it will not during such period become a competitor of appellant." A consideration of this contention requires an examination of the sections of the ordinance pertinent to a determination of the question:

"Sec. 1. There is hereby granted to the Helena Consolidated Water Company, and its successors and assigns, for the full term of twenty years from the passage hereof, the license and franchise of laying and maintaining water mains and pipes in and through all of the streets, alleys, avenues and public grounds of the City of Helena for the purpose of conveying and distributing water throughout the said city, and for the

purpose of selling the same to all persons, bodies or corporations within the said city desiring to purchase the same, and to said city for fire, sewerage and other purposes, in case said city desires to purchase the same, subject, however, to the provisions of this ordinance, hereinafter contained, establishing maximum rates, and generally to have and exercise all the rights, privileges and franchises necessary to the proper and successful furnishing of water to the inhabitants of said city if required; provided, however, that nothing herein contained shall be so construed as to give to the said Helena Consolidated Water Company, or its successors or assigns, the exclusive right of occupying the streets, avenues, alleys, and public grounds, of said city with water mains and pipes, or the exclusive right of conveying, distributing or selling the same throughout the said city, or of furnishing the same to said city, except as hereinafter set forth.

"SEC. 3. All pipes and mains, including service pipes connected therewith, shall be laid at the depth of five feet below the established grade, and shall be laid under the supervision of the street commissioner of said city as to grade and location in streets; and all repairs and extensions of such pipes and mains shall be done under the supervision of said street commissioner as to grade and location in streets. Nothing contained herein shall preclude said City of Helena from regrading or changing the grade of any street or streets within said city, or from the construction or maintenance of sewer work, or other works or plants of a public nature, or from letting, giving or granting any franchises, rights or easements to any person or persons, corporation or corporations, whomsoever, so long as such franchises, rights and easements do not interfere with the franchises, rights and easements hereby granted. And that said Helena Consolidated Water Company must and shall look solely and exclusively to the person or persons, corporation or corporations, to whom such franchises, rights and easements have been given by said city for any and all damages the said Helena Consolidated Water Company may

sustain by reason of any interference with any of its pipes, mains or hydrants, or any exposure of the same caused by such person or persons, corporation or corporations.

"SEC. 6. The said Helena Consolidated Water Company shall furnish and provide a full, ample and sufficient supply of good, pure, wholesome and clear water for the use and wants of the inhabitants of said city, and to provide said city with water for fire, sewerage (maintenance and construction) and for other purposes; and such supply shall be full, ample and sufficient for the present population of said city, and for the future population of the said city, as the same may be from time to time during the full term of five years; and said water shall be pure, wholesome and free from animal, vegetable or mineral substances, such as would render it unhealthy or unfit for domestic use.

"SEC. 26. It is hereby declared and understood to be of the essence of the agreement and the acceptance hereof that the said Helena Consolidated Water Company shall, at all times during the term of such agreement, provide all the inhabitants of the city, whatever their number may be, with a full, ample and sufficient supply of good, pure and wholesome and clear water, and shall convey, distribute and sell to them upon the terms and conditions herein provided and expressed."

By section 8 the company was required to provide twenty miles of mains within the limits of the city, and by section 10 the company was required to lay and maintain additional mains, of such sizes, at such times and upon such streets as the city council might from time to time direct. Section 17 provides that the company shall not refuse to permit connections to be made by or to sell water to persons offering to pay for the same.

Section 16 of the ordinance fixes maximum rates for water to be furnished to the inhabitants of the city. Section 21 makes appropriations for the term of five years from and after January 1, 1890, of certain sums for hydrants and the use of water for the benefit of the city. By the first section

of the ordinance, the company is granted the use of the streets, alleys and avenues and public grounds of the city for the laying and maintenance of its pipes and mains for the purpose of conveying water and selling it to those "desiring" to purchase the same, and to the city for fire and other purposes in case the city "desires to purchase the same."

Certainly, there is nothing in this section that savors of a contract beyond the obligation imposed upon the company in consideration of the franchise and privileges granted to furnish water at certain maximum rates to private persons or to the city, when such persons or the municipality desire to purchase the same. When we come to consider section 6 we find an engagement whereby the obligation of the company to furnish water to the city is limited to the term of five years, and in section 21 we find an appropriation made to cover the compensation to be paid by the city for the term of five years for the use of water for public purposes. If these sections can be construed to amount to a contract between the city and the company, binding the city to take its entire supply of water from this company for five years, which would be broken by the erection or building of a plant by the city to supply itself with water, it had expired before the beginning of this suit, and the contract, if it existed after the expiration of the term named in section 6, must be found in other sections of the ordinance. The contention is that as by section 26 the water company was bound during the term of the agreement, which, it is claimed, is twenty years, to provide all the inhabitants of the city, whatever their number, with a water supply, this contract will be impaired and its benefits to the company destroyed if the city should erect an independent plant of its own. But, in our view, this section must be read with section 1, which requires the company to furnish water to such inhabitants of the city as desire to purchase the same, and there is nothing in this agreement which binds the city to take water from the company beyond the term of five years, expressly provided in section 6, and for which, upon specific

terms as to prices, an appropriation was made in section 21. There is nothing in section 26 nor in section 1 undertaking to bind the inhabitants of the city to take water from the company. The city has not and, of course, could not undertake to make any contract upon the subject for the private supply of individuals in the city beyond securing a maximum rate of charge for water supplied. The engagement for their benefit requires the company during the term of the franchise to supply water at not exceeding certain maximum prices, which were fixed by the ordinance. Properly construed, we think this ordinance shows an agreement upon the part of the company to furnish water to the inhabitants of the city at not exceeding certain maximum rates, and to the city itself, upon terms to be agreed upon, made definite, as far as the city was concerned, for the term of five years. As thus interpreted, we do not find anything in this contract that prevents the city, certainly after the expiration of five years, from constructing its own plant. It has not specifically bound itself not so to do, and, as has been frequently held in this court, nothing is to be taken against the public by implication. *Hamilton Gas Light & Coke Co.* v. *Hamilton*, 146 U. S. 258; *Long Island Water Supply Company* v. *Brooklyn, supra,* and cases cited in the opinion. Had it been intended to exclude the city from exercising the privilege of establishing its own plant, such purpose could have been expressed by apt words, as was the case in *Walla Walla City* v. *Walla Walla Water Company,* 172 U. S. 1. It is doubtless true that the erection of such a plant by the city will render the property of the water company less valuable and, perhaps, unprofitable, but if it was intended to prevent such competition, a right to do so should not have been left to argument or implication, but made certain by the terms of the contract. The right to tax within certain limits to procure a supply of water for the municipality, which shall be owned and controlled by the city, is authorized by the Constitution of Montana, article 13, § 6. Paragraph 4800 of the Political Code of Montana provides for the carrying into

effect of this constitutional power to tax for a system of water works to be owned and controlled by the municipality. The feature of the law requiring the purchase of existing water works instead of building an independent plant by the city was held unconstitutional. by the Supreme Court of Montana in *Helena Consolidated Water Company* v. *Steele*, 20 Montana, 1.

The privilege of building other works was, in the absence of some binding contract forbidding the exercise of the power, clearly within the city's constitutional and statutory rights. We cannot find that the city has precluded itself from exercising this right by anything shown in this case. This conclusion renders it unnecessary to decide whether the city's right to construct a plant of its own was expressly saved in section 3 of the ordinance reserving the right to construct and maintain "sewer work, or other works of a public nature."

This action is also brought by the water company as a taxpayer, and it is claimed that the city had no right to acquire a water supply and build its water works except by acquiring the plant of the company.

In the findings of fact it was expressly stipulated:

"That the City of Helena contemplates and intends to do all acts and things necessary to secure a water supply and system to be owned and controlled by the said City of Helena, and that it contemplates and intends to raise funds and revenue therefor in the manner provided by law, and to use the same for said purpose, and to furnish and supply the City of Helena and the inhabitants thereof with water from its said plant, and that it contemplates and intends to purchase and secure a sufficient quantity of water for said purpose, and that complainant does not obtain any of its water supply from either Beaver, McClellen or Prickly Pear Creeks.

"That the Ordinances Nos. 467 and 483, mentioned in paragraph 27 of the complainant's bill of complaint, were duly passed and adopted and approved, and that unless said defendant, the City of Helena, is enjoined and restrained from acquiring a water supply, plant and system, it will proceed.

to acquire the same under said ordinances or such others as are necessary for said purpose, as hereinbefore stated, and will engage in furnishing the said defendant, the City of Helena, and its inhabitants, with water, suitable and proper for its use, and that to do so will depreciate the value of complainant's franchise and property, as stated in paragraph 28 of the complaint, but that no injury of which complainant can complain will result therefrom if defendant city has the rights claimed by it. . . . That the revenue for said purpose will be created and raised by borrowing money or raising funds within the limit of indebtedness, as heretofore or hereafter to be extended, in accordance with the requirements of the constitution and provisions of the statutes of the State of Montana in that behalf, unless it shall be adjudged that it has no legal or equitable right to do so, on account of the facts and admission hereinbefore stated and made."

We agree with the Circuit Court of Appeals that by this stipulation the controversy was narrowed to the question of the right of the city to erect and maintain an independent plant of its own in view of the alleged contract rights of the complainant. For that purpose, if it has the right so to do, it is conceded "it contemplates to raise funds and revenues therefor in the manner provided by law," and will raise revenues within the limits of indebtedness authorized by the Constitution and laws of Montana. This concession renders it unnecessary to notice the allegations of the complaint as to the right to tax for the purpose of erecting such works, or the alleged invalidity of any method of acquiring water works for the city except by purchase from the complainant.

*Judgment affirmed.*