### HILL et al. v. ELIZABETH CITY et al.

(Circuit Court of Appeals, Fourth Circuit.   March 10, 1924.)

No. 2212.

1. **Municipal corporations ⬤⟶682(3)—Acceptance of service of public service corporation after expiration of contract implies new contract terminable on reasonable notice.**

    Continued service by a public service corporation, and its acceptance by a city, after expiration of the express contract between them, creates by implication a new contract of indefinite duration, terminable by either party on reasonable notice at such time and under such circumstances as may be consistent with the duty both owe to the inhabitants of the city.

2. **Constitutional law ⬤⟶128—Municipal corporations ⬤⟶686—Right to construct and operate public service systems not affected by prior grant of nonexclusive franchise to private corporation.**

    A franchise to a private corporation or its contract to supply a public utility does not prevent the city from constructing and operating a like public utility of its own, unless the franchise or contract expresses or clearly implies an exclusive right.

3. **Constitutional law ⬤⟶116—Public service corporation held to have no rights which were affected by a change in the construction of the state constitution.**

    A public service corporation, which was granted a franchise and entered into a contract with a city when, under Const. N. C. art. 7, § 7, as then construed, the city was without power to construct competing works, but which constitutional provision was subsequently construed to grant such power, *held* to have no standing, after its franchise and contract had expired by limitation, to invoke the rule that one acquiring rights under one construction of the state law may not be deprived of them by a subsequent different construction.

Appeal from the District Court of the United States for the Eastern District of North Carolina, at Elizabeth City; Henry G. Connor, Judge.

Suit in equity by John T. Hill and others against the city of Elizabeth City and others. Decree for defendants, and complainants appeal. Affirmed.

For opinion below, see 291 Fed. 194.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

W. M. Maloy, of Baltimore, Md. (Maloy, Brady, Howell & Yost, of Baltimore, Md., and Aydlett & Simpson, of Elizabeth City, N. C., on the brief), for appellants.

P. W. McMullan and J. Kenyon Wilson, both of Elizabeth City, N. C. (J. B. Leigh and Thompson & Wilson, all of Elizabeth City, N. C., on the brief), for appellees.

Before WOODS and ROSE, Circuit Judges, and WEBB, District Judge.

WOODS, Circuit Judge. The plaintiffs are bondholders of the Electric Light Company of Elizabeth City, N. C., and of Elizabeth City Water & Power Company. The prayer of the complaint is for an injunction to restrain the municipality of Elizabeth City from issuing bonds or using the proceeds of bonds for the construction of a municipal light, water, and sewer system. The legal ground upon which the right to injunction is placed is that the construction and operation of a municipal system of water, light, and sewerage will impair the plaintiffs' contract rights, will deprive them of their property without due process of law, and will deprive them of the equal protection of the law. These legal wrongs, it is asserted, will result because the operation by the municipality of a plant supplying these utilities will make the contracts and franchises of the corporations whose bonds the plaintiffs hold of little, if any, value. The appeal is from a decree of the District Court dismissing the complaint for failure to state a cause of action.

The various franchises and contracts relied on by the plaintiffs are set out in the complaint and in the opinion of the District Court. Stripped of all detail, the following statement seems to be sufficient to make clear the legal issues involved. The public service corporations, whose bonds the plaintiffs hold, by franchise and contract acquired the right to supply electric lights, water, and sewerage to the municipality and inhabitants of Elizabeth City, and under these franchises and contracts constructed and operated their plants. None of the grants, however, were exclusive of the right of the city to construct and operate public utilities. Indeed, the state Constitution forbade the grant of an exclusive right. Thrift v. Elizabeth City, 122 N. C. 31, 30 S. E. 349, 44 L. R. A. 427. The last of these franchises and contracts expired by their own terms in 1917. Thereafter the service was continued by the corporations, and accepted and paid for by the city and its inhabitants, without specific agreement as to the time for which the service should be rendered and accepted. While this arrangement was in operation, the city council passed two ordinances, under legislative authority conferred by the Municipal Finance Acts of 1919 and 1921 (C. S. N. C. §§ 2918–2969; Pub. Laws N. C. 1921 [Ex. Sess.], c. 106); one ordinance looking to the issue of bonds to the amount of $550,000 for an electric, water, light, and power system, and the other to the issue of bonds to the amount of $250,000 for a sewerage system. Negotiations for the sale to the city of the light, water, and sewer systems of the public service corporations failed, because the parties were unable to agree on the price. Evidently the loss

to the light and power companies will be very great, if the city carries out its plan of constructing a system of public utilities.

[1] The continuation of the service of the light and water company and the acceptance of it by the city after the expiration of the express contracts implied a contract of indefinite duration, terminable upon reasonable notice, either by the city or by the company, at such time and under such circumstances as may be consistent with the duty both owe to the, inhabitants of the city. Denver v. Denver Union Water Co., 246 U. S. 178, 190, 38 Sup. Ct. 278, 62 L. Ed. 649. A long time must pass before the municipal system will be in operation, and there is nothing before us warranting a conclusion that the municipality will not give due notice to the public service corporations that their service is no longer desired.

[2] This indefinite renewal of the contracts did not confer any right on the operating public service corporations to enjoin the city from constructing its own plant. The general rule is indisputable that the franchise to a. private corporation, or its contract to supply light and water or other public utility to a city, does not prevent the city from constructing and operating like public utilities of its own, unless the franchise or contract expresses or clearly implies an exclusive right. Hamilton Gaslight & Coke Co. v. Hamilton City, 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963; Skaneateles Waterworks Co. v. Skaneateles, 184 U. S. 354, 22 Sup. Ct. 400, 46 L. Ed. 585; Knoxville Water Co. v. Knoxville, 200 U. S. 22, 26 Sup. Ct. 224, 50 L. Ed. 353; Norfolk County Water Co. v. City of Norfolk, (4th Circuit) 246 Fed. 650, 158 C. C. A. 606; City of Joplin v. Southwest Missouri Light Co., 191 U. S. 150, 24 Sup. Ct. 43, 48 L. Ed. 127; Helena Waterworks Co. v. Helena, 195 U. S. 383, 25 Sup. Ct. 40, 49 L. Ed. 245. In the two cases last cited it was held a city had the right to construct and operate its own plant before its contract with the public service corporation had expired.

The plaintiffs rely on Walla Walla City v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; City of Owensboro v. Cumberland Tel. & Tel. Co., 230 U. S. 58, 33 Sup. Ct. 988, 57 L. Ed. 1389; Boise Artesian Hot & Cold Water Co. v. Boise City, 230 U. S. 84, 33 Sup. Ct. 997, 57 L. Ed. 1400; Russell v. Sebastian, 233 U. S. 195, 34 Sup. Ct. 517, 58 L. Ed. 912, L. R. A. 1918E, 882, Ann. Cas. 1914C, 1282. These cases are not controlling, for in them there was either an exclusive franchise, or the violation of a contract right by the attempt to take it away, or by imposing burdens in addition to those contracted for or conferred by state constitutions or statutes.

[3] The main contention.of the plaintiffs seems to rest upon the following provision of the North Carolina Constitution (article 7, § 7):

"No county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

There has been no vote of the qualified electors of the city, and it is insisted for that reason that the city is not authorized to erect and maintain the water and light plants contemplated, in competition with the

operating water and light companies, because at the time the plants of these companies were contracted for and erected, under the law of North Carolina as then declared by the Supreme Court of the state, the construction of electric light and water plants was not embraced in the constitutional term "necessary expenses." These decisions were afterwards overruled; the court holding in Fawcett v. Mt. Airy, 134 N. C. 125, 45 S. E. 1029, 63 L. R. A. 870, 101 Am. St. Rep. 825, decided December 19, 1903, that the expenditures for electric light and water plants are "necessary expenses."

Even if the light and power companies had a right to rely on the former contrary decisions of the court for the protection of their contract rights while the contracts and franchises were running, which we do not hold, surely after the termination of their contracts they are not in a position to assert successfully that the city should be forever deprived of a right to use municipal funds in constructing water and light plants as "necessary expenses." It seems also clear under the authorities cited that, in the absence of an exclusive contract to supply the public service, the plaintiffs had no legal right which was impaired by the acts of 1919 and 1921, expressly authorizing the municipality to construct its own system of public utilities.

The court is constrained to say that the loss which a failure of the parties to agree will entail ought to be averted. There is an amount of money, as everybody knows, which expresses the value of the existing plants to the municipality for use in its own construction. The hope is indulged that some one will have the wit to find that amount, even in the cloud of feeling, and make the rightness of it so plain that it will be paid and accepted.

Affirmed.