**B. E. DURHAM, t/a North Carolina Residential Water Company and Water Company, Inc. of Kannapolis, North Carolina, Appellant,**

v.

**STATE OF NORTH CAROLINA, North Carolina Utilities Commission, and Kannapolis Sanitary District, Appellees.**

No. 12079.

United States Court of Appeals
Fourth Circuit.

Argued April 1, 1968.

Decided May 7, 1968.

A. Philip Towsner, Washington, D. C. (Z. V. Morgan, Hamlet, N. C., on brief), for appellant.

George A. Goodwyn, Asst. Atty. Gen. of North Carolina, for appellee State of North Carolina.

Edward B. Hipp, Raleigh, N. C., General Counsel, for appellee North Carolina Utilities Commission.

Beverly C. Moore, Greensboro, N. C. (Bachman S. Brown, Jr., Kannapolis, N. C., Norman B. Smith, Greensboro, N. C., and John Hugh Williams, Concord, N. C., on brief), for appellee Kannapolis Sanitary District.

Before SOBELOFF, BRYAN and CRAVEN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

Water Company, Inc. of North Carolina and its chief stockholder, B. E. Durham, seek damages of the State, its Utilities Commission, and the Kannapolis Sanitary District for infringement of its franchise. The District Court granted defendants' motions to dismiss and plaintiff has appealed. We affirm.

In 1951, Durham received a certificate of franchise from the Commission entitling him to operate a waterworks and distribution system in certain areas of Rowan and Cabarrus Counties. In 1959, it approved a transfer of his operations to the Water Company which has been serving approximately 1200 area residents ever since.[1] It is the real plaintiff here.

Kannapolis Sanitary District is a body politic and corporate established in 1963 under the laws of North Carolina.[2] As a public utility, its principal purposes are to provide water and sewerage facilities to persons within its limits. Its territory includes portions of that covered by the Water Company, and its potential operational field embraces some 22,000 residents. Prior to the establishment of the District, the area had no general water system, only limited fire protection, and sewerage disposal was by septic tank and privy. These deficiencies will be cured by the District when its building program is completed.

For organization of the District, its proponents were required by law first to present to the County Commissioners a petition signed by at least 51 per cent of the resident freeholders within its proposed service region. It had also to pass the scrutiny of public hearings before the local County Commissioners and convince them, as well as the residents and the State Board of Health, that the public health and welfare would be advanced by the District.[3] All these tests were passed by the District, and all without protest or objection from the plaintiff Water Company.

Thereafter, in 1963, the District received a commitment for a loan of $6,015,000.00 from the Federal Housing and Home Finance Agency.[4] Afterwards, an issue of $6,354,000.00 in water and sewer bonds was approved in an election by residents within the reach of the District. Construction began in 1967 for readiness in November 1968.

The defendant District asserts, and it is not denied, that in 1966 it expressed an interest in purchasing from the Water Company those portions of its properties which could be conveniently incorporated into the system planned by the District. Negotiations ensued, but without success because the Water Company put an excessive price on its assets. Also, it refused to sell separately and alone those items which would prove useful to the District.[5]

In May 1967, pursuant to its financing plan, the District applied for the issuance

1. Durham has operated a waterworks since 1931, but did not obtain a franchise until 1951.

2. Gen.Stat.No.Car. §§ 130–123 et seq. (1964), as amended, Gen.Stat.No.Car. §§ 130–124 et seq. (Cum.Supp.1967).

3. See statutes cited in note 2, supra.

4. See 12 U.S.C. §§ 1701 et seq.

5. According to the District, the Federal Government, through the Housing and Home Finance Agency, permitted the District to purchase only equipment which could be used in its system.

of bond anticipation notes. Then in August the Water Company began this action, and so prevented the District from obtaining the non-litigation certificate necessary for negotiation of the notes.

Damages of $1,000,000.00 are sought on the allegation that entry by the District into the Water Company's area of operations constitutes an impairment of its franchise, the equivalent of an uncompensated taking. Federal question jurisdiction is invoked by grounding the action on the fourteenth amendment.[6] Premise of recovery against the State of North Carolina and the Utilities Commission is unclear. With respect to them, the complaint alleges only that:

"2. The former two party defendants caused to be issued [to plaintiff] a legally constituted and effective franchise to operate a water service business in the area of Kannapolis, North Carolina * * *.

"3. Plaintiff has prudently operated a water service company, in accordance with established rates, since a date prior to May 27, 1931.

"4. On or about and prior to January, 1964, to wit, there was caused to be created the Kannapolis Sanitary District, to include the encompassing of the area specifically franchised to Plaintiff."

From this the District Court inferred, as do we, that the action purported to declare the fourteenth amendment violation against all the defendants. The fatal infirmity of the case is that the Water Company concedes it has only a non-exclusive franchise and, indeed, North Carolina's Constitution forbids the granting of an exclusive license, N.C. Const., Art. 1, §§ 7, 31.

■■ Further, it has long been settled that the holder of a non-exclusive franchise has no monopoly, and cannot complain of competition from a publicly-created utility system. E. g. Hill v. Elizabeth City, 298 F. 67 (4 Cir. 1924);

Elizabeth City Water & Power Co. v. Elizabeth City, 188 N.C. 278, 124 S.E. 611 (1924). Phrased another way, the creation by a State of a competing public utility does not amount to a "taking" compensable under the fourteenth amendment. Newburyport Water Co. v. City of Newburyport, 193 U.S. 561, 577, 24 S.Ct. 553, 48 L.Ed. 795 (1904). Thus in Helena Water Works Co. v. Helena, 195 U.S. 383, 392, 25 S.Ct. 40, 43, 49 L.Ed. 245 (1904), the Supreme Court said:

"It is doubtless true that the erection of such a plant by the city will render the property of the water company less valuable, and perhaps, unprofitable, but if it was intended to prevent such competition, a right to do so should not have been left to argument or implication, but made certain by the terms of the * * * [franchise]."

The conclusion that in law the State has neither expropriated or damaged the plaintiff's rights of property warranted the District Court's dismissal of the action on North Carolina's motion. Assuming that plaintiff has a claim in tort against the State, which we doubt, there is here neither the requisite citizenship diversity for Federal jurisdiction, nor a showing of the State's waiver of sovereign immunity.

■ Identical to those against the State, but even more tenuous, the claims pressed upon the Utilities Commission fail for the same reasons. Furthermore, the Commission is unrelated to the Sanitary District. The Commission did not create the District, has no control or regulation of it and is not answerable for the District's acts. The decision of the trial judge granting the Commission's motion to dismiss must stand.

■ Plaintiff Water Company couches its claim against the District in these words:

"5. On or about August 26, 1965, to wit, the said Kannapolis Sanitary

---

6. U.S.Const., Amend. XIV provides in pertinent part "No State shall * * * deprive any person of life, liberty or property, without due process of law * * *."

District, pursuant to its request was advised in writing by Plaintiff as to the value of its property rights, which to date the said Kannapolis Sanitary District has not replied to and continues to ignore the constitutional right of the Plaintiffs.

"6. On or about November 11, 1965 and prior thereto and to wit, without the approval of the Plaintiff, the said third party defendant commenced contacting customers of Plaintiff, inducing them to contract with the said third party defendant for services heretofore contracted with Plaintiff, with full knowledge by all defendants that there is in existence an effective contract between the Plaintiff and his respective customers.

"7. On or about June 19, 1967, to wit, without the approval of the Plaintiff, the said third party defendant destroyed certain property of Plaintiff, necessary to Plaintiff's business as a water company, and continues to destroy similar property without prior advice to Plaintiff and without any authority from Plaintiff."

On oral argument of the motions to dismiss, the Water Company clarified somewhat its cause of action as pleaded. From this it appears that the plaintiff contends that its fourteenth amendment rights were infringed by an attempt of the District to contract with the Water Company's customers. The assertion has no merit, for the holder of a non-exclusive franchise, as earlier noted, has no immunity from competition. Hill v. Elizabeth City, supra, 298 F. 67 (4 Cir. 1924).

Plaintiff's second claim against the District is that it "destroyed certain property" of the Water Company. Apparently, the District in installing its mains and meters damaged some of those of the plaintiff. The District admits this, but insists that it has made full repairs. Regardless of their merit, these claims certainly do not tender a Federal question. Damage of that kind is not a "taking" within the meaning of the fourteenth amendment. Whether there is an available State court tort action is not an issue here, but the present complaint certainly does not attain constitutional stature.

Unquestionably, the creation of the District was a serious economic blow to the Water Company. Once in operation, the Water Company may well be unable to compete, and its continued existence can be jeopardized. The parties seemed to realize this; their negotiations for the sale and acquisition of the Water Company's properties indicate their awareness. What we said, apropos of very similar circumstances, in Hill v. Elizabeth City, supra, 298 F. 67, 70 (4 Cir. 1924) seems equally applicable here:

"The court is constrained to say that the loss which a failure of the parties to agree will entail ought to be averted. There is an amount of money, as everybody knows, which expresses the value of the existing plants to the municipality for use in its own construction. The hope is indulged that some one will have the wit to find that amount, even in the cloud of feeling, and make the rightness of it so plain that it will be paid and accepted."

The judgment of the District Court is affirmed.

Affirmed.