**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CAROLINA WATER SERVICE,
INCORPORATED, of North Carolina,
<u>Plaintiff-Appellant,</u>

v.

CITY OF WINSTON-SALEM, NORTH
CAROLINA, a North Carolina
Municipal Corporation; CITY OF
WINSTON-SALEM, NORTH CAROLINA,
Alderman and Wards, in their

No. 97-2586

official capacities; MARTHA S.
WOOD, in her capacity as Mayor of
the City of Winston-Salem;
WINSTON-SALEM/FORSYTH COUNTY
UTILITY COMMISSION, the Governing
Body of the City of Winston-Salem,
the members of in their official
capacities,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
James A. Beaty Jr., District Judge.
(CA-95-636-6)

Argued: June 2, 1998

Decided: September 10, 1998

Before WIDENER, MURNAGHAN, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Edward Smoot Finley, Jr., HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellant. Gusti Wiesenfeld Frankel, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellees. **ON BRIEF:** Welton O. Seal, Jr., HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellant. Roddy M. Ligon, Jr., WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This appeal involves a utility's claims that governmental defendants violated the antitrust laws and the Constitution when they required certain customers of the utility to connect with the governmental water system or suffer the loss of governmental sewage services. The district court rejected all of the utility's claims. We affirm.

I.

In 1976, the City of Winston-Salem and adjoining Forsyth County entered into an interlocal agreement to consolidate their water and sewer system. That agreement established a combined utility commission for the two local governments and assigned to the City authority to operate and administer County water and sewage services.

Fifteen years later in 1991, the North Carolina Utilities Commission (unrelated to the joint city-county utilities commission) issued a non-exclusive certificate of public convenience and necessity to Carolina Water Service, Incorporated, to provide water service to residents in the Lockhurst subdivision of Forsyth County. Although Lockhurst

2

is outside the City of Winston-Salem's geographic limits, the City, pursuant to the interlocal agreement between the City and the County, had been providing and continued to provide sewage service to Lockhurst residents.

In 1995 the City decided to provide water service as well to the Lockhurst residents. The City refused to purchase Carolina Water's water service facilities because a part of the system was constructed from asbestos cement and would require replacement. Instead, the City obtained separate facilities capable of servicing Lockhurst residents and connected these facilities to its water distribution plant.

Section 44 of the Water and Sewerage System Policy Resolutions, enacted as a City ordinance, provides:

> Whenever any premises shall have been connected with the city sewer system, it shall be the duty of the owner of such premises to make immediate application in writing for connection with the water system and to have such connections made or to install an approved sewer-measuring device and maintain same. . . . If the owner or occupant of such premises fails to connect to the water system or install an approved sewer-measuring device, in the event that city water becomes available to the premises, the city shall have the right to go upon private premises to which such sewer service is provided and to excavate and disconnect the sewer service . . . .

In accordance with this ordinance, when public water became available the 22 Lockhurst residents were informed of the joint local utility commission's new public water service capabilities. The residents were notified that they had one month to comply with Section 44 by connecting to the City's water supply system, or they would lose sewage service. The notice stated:

> [Y]ou must purchase a water meter and connection from the City of Winston-Salem no later than May 13, 1995 to avoid disruption of your sewer service. In addition, you must sever the water lines from the [Carolina Water] water system and

3

> connect to the City of Winston-Salem water system by the above mentioned date.

The 22 Lockhurst residents discontinued service with Carolina Water and connected with the public water system. Carolina Water then filed this suit, alleging that the City, its aldermen, and the Winston-Salem/Forsyth County Utility Commission had (1) violated the antitrust laws; (2) invalidly exercised police power in contravention of the Due Process Clause; and (3) taken Carolina Water's property without compensation, contrary to the Takings Clause.

The district court granted the City's motion to dismiss with respect to the constitutional claims. After discovery, the court granted the City's motion for summary judgment with respect to the antitrust claim, concluding that state action immunity protected the City from antitrust liability.

II.

Carolina Water asserts that the City violated Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2 (West 1997), by "monopoly leveraging" Lockhurst residents -- i.e., by forcing them to receive the City's water service if they were to continue receiving sewer service. The district court held the City immune from liability on the basis of the state action doctrine.

Because the Sherman Act does not apply to the conduct of a state acting through its legislature, states enjoy full immunity from federal antitrust liability. See Town of Hallie v. City of Eau Claire, 471 U.S. 34, 38 (1985). State action immunity does not extend to a municipality, however, unless the municipality "demonstrate[s] that [its] anti-competitive activities were authorized by the State`pursuant to state policy to displace competition with regulation or monopoly public service.'" Id. at 39 (quoting City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 413 (1978) (plurality opinion)). Carolina Water maintains that the state action immunity doctrine does not protect the City; the company claims there is no "authorization of the State upon which the [City] relies in asserting the state action defense." Brief of Appellant at 30.

4

In Hallie, the Supreme Court determined that a city was entitled to state action immunity for its sewage treatment services because state statutes granted cities the authority "to construct, add to, alter, and repair sewage systems," and "to determine the areas to be served." Hallie, 471 U.S. at 41-42. The Court reasoned that "[w]e think it is clear that anticompetitive effects logically would result from this broad authority to regulate." Id. at 42 (citing New Motor Vehicle Bd. v. Orrin W. Fox Co., 439 U.S. 96, 109 (1978)). The Court explicitly rejected the plaintiff's argument that "a legislature must expressly state in a statute or its legislative history that the legislature intends for the delegated action to have anticompetitive effects," because "[t]his contention embodies an unrealistic view of how legislatures work and of how statutes are written." Id. at 43; see also Pinehurst Enter., Inc. v. Town of Southern Pines, 690 F. Supp. 444, 448-50 (M.D.N.C. 1988) (North Carolina statutes authorizing cities to operate public enterprises are sufficient evidence of state policy recognizing anticompetitive effects so as to invoke the state action immunity doctrine), aff'd, 887 F.2d 1080 (4th Cir. 1989) (table).

The North Carolina legislature has provided counties and cities with broad authority to operate and regulate "public enterprises," including water systems. See N.C. Gen. Stat.§§ 153A-274, -275, -284 (Michie Supp. 1997) (counties); id. #8E8E # 160A-311, -312, -317 (Michie 1994 & Supp. 1997) (cities). For example:

> A county may adopt adequate and reasonable rules to protect and regulate a public enterprise belonging to or operated by it. The rules shall be adopted by ordinance, shall apply to the public enterprise system both within and outside the county, and may be enforced with the remedies available under any provision of law.

Id. § 153A-275; see id. § 160A-312 (same authority for cities). State law even specifically provides that a county or city may "require the owner" of property to "connect the owner's premises with" the water and sewage lines operated by the county or city. Id. § 153A-284 (county); see id. § 160A-317 (city). Carolina Water maintains, however, that the City's action in this case lacked the requisite state authority to regulate water service outside its jurisdiction in Lockhurst -- a subdivision of the neighboring county.

5

But North Carolina law expressly authorizes local governments to cooperate in exercising the powers granted to each:"[a]ny unit of local government in this State and any one or more other units of local government . . . may enter into contracts or agreements with each other in order to execute an undertaking," id. § 160A-461 (Michie 1994), which in turn is defined as "the joint exercise by two or more units of local government, or the contractual exercise by one unit for one or more other units, of any power, function, public enterprise, right, privilege, or immunity," id. § 160A-460(1) (Michie Supp. 1997). See also id. § 153A-278 (Michie 1991) ("Two or more counties, cities, or other units of local government may cooperate in the exercise of any power granted by this Article . . . .").

Based on this authority, the North Carolina Supreme Court has stated that when a local governmental unit -- pursuant to an interlocal cooperative agreement -- operates a water and sewage system for another local governmental unit, the operating unit can exercise all of the rights for both local units with respect to that system. See McNeill v. Harnett County, 398 S.E.2d 475 (N.C. 1990). The McNeill court reasoned that one local unit "may, among other things, operate a water and/or sewer system for and on behalf of another unit of local government . . . and in conjunction therewith may exercise those rights, powers, and functions granted" to the other unit of local government. Id. at 479.

As the Supreme Court did in similar circumstances in Hallie, we believe the "foreseeable result" of this broad legislative grant of authority would logically include anticompetitive effects. Hallie, 471 U.S. at 42. In this case, the City of Winston-Salem and Forsyth County executed an interlocal agreement to consolidate their water and sewage systems. They established the utility commission in 1976, and empowered it as "the policy making board for all water and sewerage facilities operated by the City." Pursuant to statutory authority permitting one local government unit to operate the water and sewage systems of another local government unit, the agreement charged the City with ultimate responsibility for "direct operation" of the consolidated system. Thus, based on this interlocal agreement, the City had the requisite state authorization to control the terms and conditions of water and sewage services for Lockhurst residents, and state action immunity extends to the City.

6

III.

Carolina Water also asserts that Section 44 constitutes an invalid exercise of the City's police power and violates the Due Process Clause. A court will uphold a governmental exercise of police power provided some reasonable basis exists for the action. See, e.g., Goldblatt v. Town of Hempstead, 369 U.S. 590, 595 (1962) ("`debatable questions as to reasonableness are not for the courts but for the legislature'") (quoting Sproles v. Binford, 286 U.S. 374, 388 (1932)). Thus, "[t]he police power is one of the least limitable of governmental powers." Queenside Hills Realty Co., Inc. v. Saxl, 328 U.S. 80, 83 (1946). More than seventy years ago we specifically rejected a due process challenge by the bondholders of a private utility, with a nonexclusive franchise to supply electric lights, water and sewage, to a North Carolina city's issuance of bonds to construct a public light, water and sewage system. See Hill v. Elizabeth City, 298 F. 67 (4th Cir. 1924). Nevertheless, Carolina Water asserts that the City's enforcement of its duly enacted ordinance is "arbitrary and capricious" and that "City witnesses gave no plausible explanation" for the ordinance's existence. This contention has no merit.

The North Carolina Supreme Court has specifically noted that assessing sewage service charges based on water consumption "is a reasonable and valid regulation." Covington v. Rockingham, 146 S.E.2d 420, 424 (N.C. 1966) (internal quotation marks omitted). An assistant city manager explained in deposition the specific reasons for Section 44, including the City's preference for relying on its own water meters (rather than those of a private company) for reasons of efficiency and reliability. Furthermore, state law expressly permitted the City and County "to enter into an interlocal agreement, whereby the City could exercise on behalf of the [utility commission]" all powers possessed by the county under state law, including the power to operate water systems and to require citizens to connect to the water systems.

Carolina Water's reliance on Dale v. City of Morgantown, 155 S.E.2d 136 (N.C. 1967), is misguided. In Dale , a property owner had been denied electrical service in part because of unrelated housing code violations. Id. at 139. The court held that a "supplier of electric power, or other public service, may not lawfully refuse its service

7

because of a controversy with the applicant concerning a matter <u>which is not related to the service sought</u>." <u>Id.</u> at 141 (emphasis added). Thus, the court relied on the fact that the provision of electrical service and the housing code violation were unrelated, and that the asserted housing code violation was "a matter collateral to the duty of the city to supply electric power for use in the structure." <u>Id.</u> at 142.

In the case at hand, there exists no similar argument that the sewage service and the water service, upon which continued sewage service is conditioned, are unrelated. The City required residents to obtain water service from the utility commission in order to continue their sewage service precisely because it uses water meter readings to assess sewage service charges, and because it determined that providing an integrated system where available proved more efficient and reliable. Indeed, the water and sewage services are so interconnected that the system is denominated the "Water and Sewerage System."

IV.

Finally, Carolina Water contends that the district court erred in dismissing its claim that the City deprived it of property without just compensation in violation of the Takings Clause. Specifically, the company asserts that the City violated its constitutional rights when the City required Lockhurst residents to use the public water service if they wanted to continue to use public sewage service.

Relying on our holding in <u>Durham v. North Carolina</u>, 395 F.2d 58 (4th Cir. 1968), the district court held to the contrary. In <u>Durham</u>, we rejected a similar Takings Clause argument when a public enterprise established water and sewage services in an area that a private water company had previously serviced. We dismissed the private water company's suit in <u>Durham</u>, noting that the water company only possessed a non-exclusive franchise to operate a water distribution facility. We reasoned that "it has long been settled that the holder of a non-exclusive franchise . . . cannot complain of competition from a publicly-created utility system." <u>Id.</u> at 60 (citing <u>Hill v. Elizabeth City</u>, 298 F. 67 (4th Cir. 1924)). Moreover, we held that "the creation by a State of a competing public utility does not amount to a `taking' compensable under the fourteenth amendment." <u>Id.</u>

8

Carolina Water relies on more recent Supreme Court takings cases in which the Court has examined three factors to determine whether a regulatory taking has occurred: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation interferes with investment-backed expectations; and (3) the character of the government action. See Eastern Enter. v. Apfel , 118 S. Ct. 2131, 2146 (1998) (plurality opinion); Connolly v. Pension Benefits Guar. Corp., 475 U.S. 211, 224-25 (1986) (citing Penn Cent. Transp. Co. v. New York City, 438 U.S. 104 (1978)).

As the Supreme Court has pointed out, "it would be surprising indeed to discover" that a regulation satisfying Due Process amounts to an unconstitutional taking. Eastern Enter. , 118 S. Ct. at 2148 (plurality opinion) (quoting Connolly, 475 U.S. at 223). This is not that "surprising" case. Cf. id. at 2149-53. Rather, examination of the record in light of the Connolly and Durham factors leads to inescapable conclusion that Carolina Water's Takings Clause claim fails. Although the City's actions may well have a serious economic impact on Carolina Water, the other two Connolly factors weigh against the company.

First, Carolina Water could not have harbored a reasonable investment-backed expectation that the City would never take this action. The state and local governments of North Carolina have highly regulated the water service industry. Carolina Water's ability to service residents derived from a non-exclusive certificate, and its right to continue providing water service remained at all times controlled by the North Carolina Utility Commission, which could revoke or suspend the franchise. See N.C. Gen. Stat. §§ 62-112, -113 (Michie Supp. 1997).

Moreover, a reasonable investor would have considered that state statutes permitted cities and counties to form joint entities for the purpose of providing water and sewage services such that the City could provide these services to County residents. In fact, the interlocal agreement relevant to this case was executed in 1976. At that time, Winston Salem and Forsyth County established their joint utility commission, which adopted policy resolutions, including Section 44, that were also adopted as city ordinances. Section 44, which requires residents receiving sewage service from the City to connect to the City's

9

water service where available, put Carolina Water on notice that the City could develop an integrated system that likely would severely restrict Carolina Water's customer base. A reasonable investor therefore would have understood that Carolina Water's non-exclusive franchise left open the possibility that the public authority might create its own water service and might integrate that service with its sewage service, particularly given the historically public nature of water and sewage systems.

Although in Durham we did not discuss the private water company's "reasonable investment backed expectations" as such, it was precisely the company's lack of such expectations that animated our holding that the government had not deprived it of property without compensation. Carolina Water attempts to distinguish Durham by noting that in Durham the publicly created utility system provided open competition for the private water company, while in this case the City's conduct was "coercive and anti-competitive" because it required customers to connect to its system or lose sewer services. Thus, the company contends that the anticompetitive nature of the City's action distinguishes the constitutional implications of this case from Durham, where the public authority merely entered the water service market as a competitor of the private company and not as a government exercising its police power in a manner shielded from the antitrust laws solely because it is a state actor. But we did not base our holding in Durham on the extent or effect of the competition provided by the publicly created utility system. Indeed, although the public utility in Durham did not condition continued sewage service on the acceptance of public water service, we nonetheless deemed it "[u]nquestionabl[e]" that public service might render the private company "unable to compete," thereby calling the company's "continued existence" into "jeopard[y]." Durham, 395 F.2d at 61. Durham focussed on the fact that the private water company, like Carolina Water, had only non-exclusive franchise rights. See id. at 60. A party with such rights does not enjoy a reasonable investment-backed expectation that the government will not disturb them.

For example, in Helena Water Works Co. v. City of Helena, 195 U.S. 383 (1904), the Supreme Court upheld (against a takings claim) the City of Helena's right to establish its own water system even if it made a private company's system unprofitable. The Court

10

explained that the private company had a non-exclusive franchise and noted that "[h]ad it been intended to exclude the city from exercising the privilege of establishing its own plant, such purpose could have been expressed by apt words." Id. at 392; see also Tennessee Elec. Power Co. v. Tennessee Valley Auth., 306 U.S. 118, 139 (1939) (non-exclusive franchises provided by the state "confer no contractual or property right to be free of competition from . . . the state or municipality granting the franchise").

Similarly, in Stillings v. City of Winston-Salem , 319 S.E.2d 233 (N.C. 1984), the North Carolina Supreme Court held that a solid waste collection company, which had franchise rights in County areas subsequently annexed by the City, was not entitled to compensation for a taking despite the fact that the City's public utility offered its garbage collection services to residents for free and, therefore, assertedly did not fairly compete with the private franchisee. The court reasoned that "it is essential to realize that `all grants of . . . franchises . . . are taken subject to existing laws,'" id. at 237 (quoting Chesapeake & Ohio Rwy. Co. v. Miller, 114 U.S. 176, 188 (1885)) (ellipses in original). The company's franchise therefore existed subject to the possibility that, under State law, the areas might be annexed by the City and open to the City's provision of free service -- a valid exercise of its police power. Id.  Moreover, the City's actions did not actually "prohibit the plaintiffs from carrying on their collection of solid waste." Id. at 238. Even though the action of the public utilities had "diminished or destroyed" the value of the private franchise, the court found no taking and noted that"[i]t is generally accepted that a governmental agency is not precluded from competing with its franchisee." Id.

The case before us closely resembles Helena Water Works, Durham, and Stillings in that the City has not directly blocked Carolina Water from providing its services to residents but has made its services to those in Lockhurst highly undesirable. We remain unconvinced that any monopolistic feature of the City's action is of constitutional moment. In all three of these cases, the courts clearly understood that the presence of the publicly controlled service would severely devalue the private company's pre-existing franchise. Indeed, the provision of free services in Stillings strikes us as at least equally anticompetitive: the "free" services could not be provided

11

unless subsidized through the city's power to collect revenue. But as Stillings illustrates, that contingency "inhere[s] in" the State-sponsored franchise as a "background principle." Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1029-30 (1992). Moreover, in Stillings the court found no taking had occurred despite the fact that the private company held an exclusive franchise whereas in this case Carolina Water possessed only a non-exclusive franchise.

The final Connolly factor -- the character of the government action -- also offers Carolina Water no support. The Supreme Court has distinguished between a "physical invasion" of one's property and the effects of government regulation. See Eastern Enter., 118 S. Ct. at 2146 (plurality opinion); Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 426 (1982). A government regulation may in fact go so far as to violate the Takings Clause unless just compensation is provided. See Eastern Enter., 118 S. Ct. at 2146 (plurality opinion) ("economic regulation[s] . . . may. . . effect a taking"); Lucas, 505 U.S. at 1015, 1027-31 (a regulation that "denies all economically beneficial or productive use" of property "beyond what the relevant background principles would dictate" amounts to a taking requiring just compensation). However, the Court has stated that "[a] `taking' may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." Penn Cent., 438 U.S. at 124 (internal citation omitted); see also Eastern Enter., 118 S. Ct. 2146 (plurality opinion); Connolly, 475 U.S. at 225.

In this case, the City's actions did not constitute a physical invasion of Carolina Water's property. The City did not appropriate Carolina Water's lines; the City did not use the lines; the City did not prohibit their use by the company. Carolina Water does not even maintain that it is unable to service customers in other County subdivisions pursuant to its existing non-exclusive certificate, or customers that (however unlikely) choose to forego City-provided sewage service.

Notably, the character of the government's action in this case differs markedly from that at issue in the Supreme Court's recent decision in Eastern Enterprises. There, the Court examined whether the

12

Coal Act (which sought to remedy problems in the funding of coal miner health benefits) effected a taking by "impos[ing] severe retroactive liability on a limited class of parties that could not have anticipated the liability." Eastern Enter., 118 S. Ct. at 2149 (plurity opinion). Four Justices relied on the retroactive character of the government action to find an unconstitutional taking, concluding that the legislation improperly imposed liability "based on the [plaintiff's] conduct far in the past." Id. at 2153.

By contrast, here the regulation requiring residents to obtain their water service from the City if they also obtain their sewage service from the City does not retroactively burden Carolina Water. Rather, the company's non-exclusive franchise necessarily contemplated the possibility that public authorities might decide to provide their own water system and (given the broad regulatory authority provided by State law) might decide the most efficient and reliable system required unification of water and sewage services. Unlike Eastern Enterprises, the government action here does not regulate past conduct. Indeed, it does not directly regulate Carolina Water's conduct at all. It simply renders Carolina Water's services wholly undesirable as a practical matter.

V.

In sum, we affirm the district court's dismissal of Carolina Water's constitutional arguments and its grant of summary judgment with respect to Carolina Water's antitrust claim.

AFFIRMED

13