### SOUTHERN CALIFORNIA UTILITIES, Inc., v. CITY OF HUNTINGTON PARK et al.

Circuit Court of Appeals, Ninth Circuit.
May 20, 1929.

No. 5725.

Paul Overton and E. W. Brewer, Jr., both of Los Angeles, Cal., for appellant.

Carson B. Hubbard and Thomas A. Berkebile, both of Los Angeles, Cal., for appellees.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. April 13, 1903, the board of supervisors of Los Angeles county, state of California, adopted an ordinance granting to E. B. Baker and assigns, for the term of 30 years, the privilege and franchise to lay down, construct, and maintain pipes, pipe lines, and water conduits through, in, and under the public streets, alleys, and highways of the county, then or thereafter established, within certain described territory, for the purpose of carrying, conducting, and distributing water for domestic purposes and for irrigation. Thereafter Baker assigned the franchise, rights, and privileges thus

granted to the South Los Angeles Water Company, and June 7, 1926, the South Los Angeles Water Company assigned the same to the Southern California Utilities, Inc.

The city of Huntington Park was incorported as a municipal corporation under the general laws of the state in 1906, with boundaries wholly within the territory described in the ordinance of 1903. June 4, 1928, the city council of the city thus incorporated adopted a resolution declaring its intention to lay a system of pipes and pipe lines under and along the streets and other public places within the city to furnish and supply water to the inhabitants thereof, then and theretofore supplied by Baker and his successors in interest. The city limits of the city of Huntington Park have been extended once or twice since its incorporation, but this and other facts set forth in the complaint are not material to a decision of the question now before us. The present suit was instituted by the assignee of the franchise of 1903 to restrain the city from laying a system of pipes and pipe lines in its streets and public places to furnish and supply water to its inhabitants for domestic purposes, upon the ground that such action on the part of the city will impair the obligation of the contract contained in the ordinance of 1903. The bill of complaint was dismissed on motion in the court below, and the plaintiff has appealed.

■ The right of a municipal corporation to grant a franchise to construct a water system to supply water for the use of itself and its inhabitants for a limited period, exclusive even as against itself, is well settled. But it is equally well settled that a grant of such rights and privileges is strictly construed, and whatever is not unequivocally granted is withheld. Nothing passes by implication. Hamilton Gaslight & Coke Co. v. City of Hamilton, 146 U. S. 258, 13 S. Ct. 90, 36 L. Ed. 963; Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685–696, 17 S. Ct. 718, 41 L. Ed. 1165; City of Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 S. Ct. 77, 43 L. Ed. 341; Skaneateles Waterworks Co. v. Skaneateles, 184 U. S. 354, 22 S. Ct. 400, 46 L. Ed. 585; City of Joplin v. Light Co., 191 U. S. 150, 24 S. Ct. 43, 48 L. Ed. 127; Helena Waterworks Co. v. Helena, 195 U. S. 383, 25 S. Ct. 40, 49 L. Ed. 245; Knoxville Water Co. v. Knoxville, 200 U. S. 22, 26 S. Ct. 224, 50 L. Ed. 253; City of Vicksburg v. Vicksburg Waterworks, 202 U. S. 453, 26 S. Ct. 660, 50 L. Ed. 1102, 6 Ann. Cas. 253; Madera Waterworks v. City of Madera, 228 U. S. 454, 33 S. Ct. 571, 57 L. Ed. 915; Piedmont Power Co. v. Graham, 253 U. S. 193, 40 S. Ct. 453, 64 L. Ed. 855.

It may well be questioned whether these rules are applicable to a mere ordinance adopted by a county board of supervisors in the state of California. In the first place, the ordinance itself was little more than a grant of a right of way or easement. It imposed no obligation whatever on the county beyond the grant itself, and imposed no obligation on the grantee except in the matter of laying the pipes. The grantee did not agree to furnish or supply water to any person or persons for any purpose or for any period of time. Whatever obligation it assumed in that regard was imposed by the general laws of the state, not by the ordinance.

■ Again, a county differs widely from a municipal corporation, both in its purposes and in its powers.

"One feature by which a city is distinguished from the county, in this state, is the source from which its authority is derived. The powers to be exercised under a county government are conferred by the Legislature, irrespective of the will of the inhabitants of the county, whereas the inhabitants of a city are authorized to determine whether they will accept the corporate powers offered them, to be exercised by officers of their own selection." Kahn v. Sutro, 114 Cal. 316–319, 46 P. 87, 88 (33 L. R. A. 620).

"It is well settled that counties are not municipal corporations, or, strictly speaking, corporations of any kind. They are obviously lacking in the essentials which chiefly characterize and distinguish municipal corporations, and it has often been said that they do not come within the latter class of corporations. It is true that both municipal corporations and counties are governmental agencies, but the manner and source of their creation and the purposes, respectively, to subserve which they are brought into existence and activity are entirely at variance. 'Municipal corporations proper are called into existence either at the direct solicitation or by the free consent of the persons composing them, for the promotion of their own local and private advantage and convenience. On the other hand, counties are local subdivisions of the state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them. The former (municipal) is asked for, or at least assented to, by the people it embraces; and the latter organization (counties) is superimposed by a sovereign and paramount au-

thority. \* \* \* With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy.' 1 Dillon on Municipal Corporations (5th Ed.) § 35." County of Sacramento v. Chambers, 33 Cal. App. 142, 164 P. 613.

Again, in Fall v. County of Sutter, 21 Cal. 237, the court said:

"We do not consider it necessary to criticise very closely the provisions of the act of 1850 or 1855 in reference to bridges, ferries, etc., to determine whether the rights of the plaintiffs are governed by the first or last of these statutes, or both together; nor is it necessary to decide the question of the power of the Legislature to divest itself, by way of grant, of the right to make any further or other grant of a ferry or bridge franchise, so as to interfere with the business or profits of the one first granted. For it is not pretended that any express grant was made to the plaintiffs here to this effect. The acts of 1850 and 1855, while they empower the court of sessions in the one case, and the board of supervisors in the other, to grant this franchise, do not purport to make the grant in exclusion of the right of the state, or the board, or the court, to grant to anyone else a franchise for a bridge or ferry in the same neighborhood, or so situated as to interfere with the first. These franchises, being sovereign prerogatives, belong to the political power of the state, and are primarily represented and granted by the Legislature as the head of the political power; and the subordinate bodies or tribunals making the grants are only agents of the Legislature in this respect. But the delegation of these powers to these subordinates in no way impairs the power of the Legislature to make the grant." ·

So in this case the grant of 1903 was made by the board of supervisors as a mere agent of the state. The agent was powerless to limit the authority of its principal, and it made no attempt to do so.

The appellant does not claim that the grant was exclusive in its terms, but simply that the grant was necessarily exclusive, because of the fortuitous circumstance that the grantor was without authority to lay pipes in its highways and streets for the purpose of supplying water to its inhabitants at the time the grant was made. But the assignor of the appellant accepted the grant with full knowledge of the fact that the state might grant the same rights and privileges to others, or to a municipal corporation to be thereafter creat-

ed, and the appellant is in no position to complain even if the unexpected has happened.

In any view we take of the case, therefore, the claim of the appellant is without merit, and the decree is affirmed.