[Civ. No. 21619. Second Dist., Div. Three. Dec. 19, 1956.]

SAN VICENTE NURSERY SCHOOL (a Corporation) et al., Appellants, v. THE COUNTY OF LOS ANGELES et al., Respondents.

Brock, Easton, Fleishman & Rykoff and Stanley Fleishman for Appellants.

Kenny & Morris and Robert W. Kenny as Amici Curiae on behalf of Appellants.

Harold W. Kennedy, County Counsel, and Richard L. Riemer, Deputy County Counsel, for Respondents.

WOOD (Parker), J.—Action for declaratory relief and injunction. Plaintiffs sought a declaration that the county of Los Angeles had a legal right to permit plaintiff nursery school, which is a private school, to use a public park of the county and a building and adjacent facilities in the park for school purposes. In another cause of action, plaintiffs sought an injunction restraining the county from evicting the school from the park. At the trial, plaintiffs abandoned the cause of action for an injunction. The judgment, in favor of defendants, declared that the use of the building and facilities for school purposes, or the use of other space in the park for such purposes, was an illegal diversion of the park. The judgment also provided that no injunction should issue against the eviction of the school. Plaintiffs appeal from the judgment.

The allegations in the cause of action for declaratory relief were, in part: Plaintiff San Vicente Nursery School is a nonprofit corporation existing under the laws of California. Plaintiffs Walsh and Freedman are taxpayers of said county, are members of the school, and are parents of children who

attend the school. Plaintiff William Gould is a member of the school, is the father of a child who attends the school, and is guardian ad litem of plaintiff Nancy Gould, a minor, 4½ years of age. The individual plaintiffs bring the action on behalf of all members and children of the school. Since December 3, 1947, the school has been on the West Hollywood Park, a county park. The school operates five days a week from 9 a. m. to 12 noon and employs a teacher. The mothers of the school children work in rotation as teaching assistants, and as drivers who take the children to school "in car pools." The fathers of the children assist in making and repairing play equipment. Parents pay $17.50 a month as tuition for each child, which amount is used to pay the teacher's salary and purchase play equipment. The use of the park by the school has not interfered with the customary use of the park by the general public. On March 4, 1954, the school was given a 30-day eviction notice which was signed by defendant Gruendyke, the superintendent of parks and recreation. A controversy exists between plaintiffs and defendants as to whether, as a matter of law, the park may be used to store play equipment of the nursery school.

In a supplemental complaint, plaintiffs allege that after the filing of the complaint they requested the Board of Supervisors of Los Angeles County to permit the school to construct its own storage facilities in the park, and the board declined to entertain the request, stating that it was a legal issue.

Defendants allege in effect, in their answer, that plaintiff school has continuously occupied the building in the park, and the horseshoe area adjoining the building, at all times for the past six years to the exclusion of all other members of the general public, who are not members of plaintiffs' private school.

The parties made a written stipulation of the following facts: The park was acquired by the county by purchase. The school is a nonprofit, nonsectarian corporation existing under the laws of California. The school has a license from the State Department of Social Welfare permitting the attendance of 20 children, and the school must comply with the standard set by that department. Children are admitted "on a first come, first serve basis." The school operates five days a week from 9 a. m. until 12 noon in a corner of the park. The dimensions of the building occupied by the school, where the play equipment is stored at all times even when the

children are not present, is about 13 feet by 21 feet. The school also occupies a closet therein, which is about 4 feet by 5 feet, and uses the adjoining rest room. During the sessions the school occupies the horseshoe area, adjoining the building, which is 35 feet by 40 feet. The building is opened about 9 a. m. each day by the park attendant and is locked by him about 12:30 p. m. The school has so occupied the building, closet, and horseshoe area uninterruptedly about seven years —since December 3, 1947. At that time the school was given permission by the director of the park to meet in the building and store its equipment there. During the first two months the school paid $25 a month as rent, but thereafter no rent was required to be paid. The play equipment is stored in such a manner that it is impracticable for other groups to use the building. The space used by the school is about ½ of 1 per cent of the park area. The school is a cooperative one, wherein the parents are responsible for the business administration and financing. The school is also a child study center for the parents. A teacher is employed by the school. The mothers work in rotation as teaching assistants and as drivers who take the children to school "in car pools." The fathers assist in making and repairing play equipment. Each Sunday some of the fathers wash the building and rest room. At times they have put new linoleum on the floor of the building. They built a locker in the park for storage of play equipment, with permission of the park director. The school has a key to the locker. The parents pay $20 a month as tuition for each child, which amount is used to pay the teacher and to purchase play equipment. No one makes any pecuniary profit from the school. The school has graduated about 150 children and parents, and it contributes to their physical, mental and moral development, and it "constitutes" recreation for the children and education for the parents. The school includes activity in the fields of music, drama, art, handicraft, science, literature, nature study, athletics, and informal play. The building was originally intended to be used as a card playing shelter, and defendants intend to use the building for that purpose. On December 20, 1953, the county counsel of Los Angeles County rendered an opinion, which is attached to the stipulation. (The opinion was to the effect that such use of the park for school purposes was illegal.) On January 26, 1954, defendant Gruendyke, who is the superintendent of parks and recreation, told some of the parents that he had received an opinion of the county counsel of Los Angeles County that

the use of the park by the school was prohibited by law. On March 4, 1954, defendant Gruendyke, as such superintendent, gave the school a 30-day eviction notice. Plaintiffs Walsh and Freedman are residents and taxpayers of Los Angeles County. Mrs. Freedman is a member of the school and has a child in attendance there. Plaintiffs Walsh and Gould are former members of the school, who had children in attendance there when the action was commenced. Plaintiff Nancy Gould, a child, was in attendance at the school when the action was commenced. Defendants contend that, as a matter of law, the school may not store its equipment in the building or in any other building or facility in the park. Plaintiffs contend that the storage of the equipment is legal.

At the trial it was stipulated orally that the school was of value to the children and the parents.

Two parents, who were members of the school, testified that the school was of value to the community.

Mrs. Harmon, the teacher at the school, testified that on one occasion she stored the school equipment at one side of the room so that there would be room in the building for a meeting of cub scouts.

Mr. Wyckoff, senior maintenance man at the park, testified he has been an employee at the park since 1946; the building involved here is known as the senior citizens building or card shelter building; he has not seen the school children interfering with the use of the park by other persons; the county repairs and maintains the building; the county has its own program for small children, which is known as the Tiny Tots program; about six children are in attendance.

Mr. Swab, director of the park, testified that the leader of the Tiny Tots program is a university student who works part time for the county; the children of the plaintiff school do not interfere with the use of the park by other persons; there is not ample space in the park to meet all the requests for use of the park; if the school did not tie up the facilities of the park, the presence of the school would be good for the park; no other group stores equipment in the park; when other groups use a building in the park they pay $1.00 an hour rent before 6 p. m., and $2.00 an hour thereafter.

Mrs. McKellar, who was director of the park from 1941 to 1955, testified that she was director when the school started; the school was given permission to use the building on a temporary basis; the building was intended for use by senior citizens; there were complaints by parents in the community

that, by reason of the school, the play equipment in the park could not always be used by other children; the school program is a good program; the school has had exclusive use of the building and horseshoe area about seven years; the school equipment stored in the building interferes with the use of the building by other groups.

The court made findings in accordance with said written stipulation. Further findings were as follows: The school has had the exclusive use of the building and horseshoe area for seven years to the unreasonable exclusion of other members of the public. To allow the school to continuously store its equipment in any park building or to build its own storage facility in the park would be an exclusive use of public park property and an unreasonable exclusion of the general public from that portion of the park so occupied by the school. The benefit to the members of the school and their children is the primary purpose of the use of the park property by the school. The use of the park by the school does not contribute to the enjoyment of the park by other members of the public, but detracts from such enjoyment. The exclusive use of the park property by the school, a limited private group, is not a public use or public purpose. A recreation program for pre-school children conducted by a public authority for the public is a proper park purpose. A privately conducted nursery school for the benefit of a limited private group upon a public park is not a proper park purpose but is a diversion of the park property. It is equally a diversion of such property whether the school has the exclusive use of a park building or any park facility for storage of equipment, or builds its own storage facility in the park. During the occupancy of the building by the school the county has performed the usual maintenance and upkeep of the building.

The court found further that: It is not true that the removal of the school from the park would involve an illegal expenditure of county funds or waste of county property. It is not true that the county has not been put to expense by reason of the occupancy of the building by the school. It is not true that there is sufficient space in the park to meet all requests for use of the park. It is not true that any other groups have been given exclusive use of any park facility for storage or other purpose. It is not true that the only reason the county requested the school to vacate the building was the advice of the county counsel, but it is true that the county officials determined. as a matter of fact. that

the exclusive use by the school unreasonably excluded the public from the use of the facility occupied by the school, and the superintendent of parks determined, as a matter of policy, that the building should be opened to the public generally for the purposes for which it was originally designed and for all other public uses. It is not true that the school will necessarily lose its license, issued by the social welfare department, because it is not permitted to store its play equipment on the park property. It is not true that the county has barred the school or its members from using the park in the same way as other members of the public.

The judgment was that the existing use of the building and adjacent facilities constituted an illegal diversion of the park; and the proposed allocation of other space in the park buildings, or the building of storage facilities in the park by the school at its own expense, would constitute an illegal diversion of the park.

■ A county has only those powers which are specifically conferred by charter or the general law; or those powers necessarily implied from the powers expressed. There is no express authority which permits the use of a public park for a private nursery school. ■ In the absence of such authority a county cannot permit the use of a public park in a manner which will unreasonably impair or interfere with the right of the public to use the park. (See 64 C.J.S., p. 307, § 1822; and *Hall* v. *Fairchild-Gilmore-Wilton Co.*, 66 Cal.App. 615, 625 [227 P. 649].) In *Williams* v. *Gallatin*, 229 N.Y. 248 [128 N.E. 121, 18 A.L.R. 1238], it was said at page 253 (N.Y.): "A park is a pleasure ground set apart for recreation of the public, to promote its health and enjoyment. [Citation.] It need not and should not be a mere field or open space, but no objects, however worthy, such as court houses and school houses, which have no connection with park purposes, should be permitted to encroach upon it without legislative authority plainly conferred, even when the dedication to park purposes is made by the public itself . . . ." In *Derr* v. *City of Fairview*, 121 Okla. 23 [247 P. 45], it was held that a lease to plaintiff by defendant city of a portion of a park for 25 years, in which lease plaintiff was given the exclusive right and control of the land leased, amounted to an ouster of the public from the park, and therefore the lease was invalid. In a note in 116 American Law Reports 889 under the title "Subsidizing Recreational Enterprises," it

was said at page 891: "The question of the power of a county
. . . to lend its aid to a private enterprise conducted for
recreational or entertainment purposes depends upon a num-
ber of different considerations, including (1) whether such
an enterprise can be deemed a 'public purpose' within the
general rule restricting the expenditure of public funds to
public purposes, (2) whether the legislature has authorized
the county or municipality to lend its aid to the enterprise in
question, and (3) whether the state Constitution contains a
provision, as is the case in many states, forbidding local
authorities to lend their aid to private enterprises."

Section 31 of article IV of the Constitution of California
prohibits a county from using public funds for private pur-
poses. (*Goodall* v. *Brite,* 11 Cal.App.2d 540, 544-545 [54
P.2d 510].)

■ As above stated, the trial court found to the effect
that the school, which is conducted by a private group of
persons, has had the exclusive use of the building for seven
years to the unreasonable exclusion of other members of the
public, and that the primary purpose of such exclusive use
was the benefit to the limited number of children attending
the school and their parents, and that such exclusive use
by the private group was not a public use or public purpose.
The findings are supported by the evidence. The evidence
shows that the school is in session five mornings each week
(Monday through Friday inclusive), that the equipment of
the school remains stored in the building all the time, and
the building is locked all the time when school is not in
session. It was stipulated that the equipment was stored
in the building in such a manner that it was impracticable
for other groups to use the building. Photographs (received
in evidence) of the interior of the building show that barrels,
boxes, tables, chairs, boards and many miscellaneous things
were so stacked therein that it would be impossible for any
group of persons (even plaintiffs) to use the major portion
of the room as a meeting place. The photographs and the
evidence indicate that the members of the private school
contemplated the continued exclusive daily use of the public
property for an unlimited period of time. Plaintiffs did
allege in their complaint that children are admitted to the
school "on a first come, first serve basis." There was evi-
dence, however, that when a parent was interested in be-
coming a member of the school the matter was referred to
the "membership chairman" of the school, who had the duty

of advising the prospective member as to the responsibilities of a parent in a cooperative nursery school; and there was evidence that the chairman considered whether or not the prospective member was in sympathy with the aims of the school group. It was stipulated (orally) that there had been occasions when parents, who had applied for membership, declined to join after the responsibilities had been explained to them. It thus appears that to some extent the matter of selection was involved in admitting new members. The school was privately conducted and was limited to a few children and their parents, who paid the required tuition fee to the school. The building was not open to the public generally. The general public was excluded from the use of the park to the extent that the school had the exclusive use or occupancy of the building and facilities. The use of the building by the school was not a temporary use but was a continuous exclusive use or occupancy for seven years. The use of the park by the school did not contribute to the enjoyment of the park by the general public but contributed only to the enjoyment of the park by the few children and their parents. The existing use of the building and facilities by the school was not a public use or public purpose; and the proposed exclusive use of other space in the park by the school would not be a public use or public purpose.

The judgment is affirmed. The purported appeal from the order denying the motion for a new trial is dismissed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied January 17, 1957, and appellants' petition for a hearing by the Supreme Court was denied February 13, 1957.