[Civ. No. 8655.   Fourth Dist., Div. Two.   May 13, 1968.]

JOHN R. BYERS, Plaintiff and Appellant, v. BOARD OF SUPERVISORS OF SAN BERNARDINO COUNTY et al., Defendants and Appellants.

150

Lonergan, Jordan & Gresham and Allen B. Gresham for Plaintiff and Appellant.

Stanford D. Herlick, County Counsel, Donald R. Egan and Paul A. Grub, Jr., Deputy County Counsel, for Defendants and Appellants.

GABBERT, J. pro tem.*—In 1957 and 1958 certain residents of San Bernardino County in the Daggett, Newberry and Yermo desert areas formed the Elephant Mountain T.V. Club to rebroadcast television signals by use of a television translator station. The club charged the members for the rebroadcasting service.

In 1965 the club encountered financial difficulties because certain residents of the area found it desirable to receive the service gratuitously, rather than making contributions in support of the club. As revenues fell, certain members of the club circulated a petition in the area served by the translator station requesting that the San Bernardino County Board of Supervisors form a tax-supported entity to pay for such television rebroadcasting service.

After the petition was received by the Board of Supervisors, two members of the Board initiated proceedings to form County Service Area No. 40 to provide television translator signals. The Board unanimously passed and adopted a resolution indicating its intention to form such County Service Area. The notice required by law was duly published and a public hearing held. Following the hearing, the Board found that the desert area mentioned could not receive television signals from existing public or private translator or rebroadcasting stations, also that no private company had offered to provide television translator service under any system at reasonable cost.

---

*Assigned by the Chairman of the Judicial Council.

The Board of Supervisors further found that educational, recreational and informational needs of the territory were public needs and providing television reception served a proper public purpose. The Board thereupon established County Service Area No. 40. A petition thereafter filed with the Board protested establishment of the Service Area and requested a referendum election thereon. The election was held and voters in the area approved the Board's action by a vote of 587 for, 182 against.

The plaintiff then filed a petition for review, mandate, injunctive and declaratory relief, requesting the superior court order defendant board of supervisors to cease and desist from conducting further proceedings in connection with the creation of County Service Area No. 40. The cause was tried by the court, which ruled in favor of defendants. Thereafter, the court signed findings of fact and conclusions of law, ordering judgment in favor of defendants which was duly entered. Plaintiff filed a motion for a new trial which was granted by minute order with a formal order thereafter entered, setting forth the court's reasons for granting the motion. Defendants filed notice of appeal under rules 2(a) and 3(a), Rules of Court. Plaintiff filed notice of cross-appeal under rule 3(a), Rules of Court.

The basic question raised is whether a board of supervisors has the power and authority to form a county service area for the purpose of acquiring, maintaining and operating a television translator station.

Defendants advance four general lines of argument in opposition to the action of the court in granting the new trial:

*First*: The trial court should not have granted a new trial on grounds of (a) insufficiency of the evidence, or (b) that the decision was against law.

*Second*: The County Service Area Law (Gov. Code, § 25210.1 et seq.) provides authority for the board of supervisors' action in setting up such a service area when the Board determined that such service area served a public purpose and primarily benefited the residents within the area to be served.

*Third*: Government Code, section 53066, which provides for franchising or licensing community antenna television systems, does not create an exclusive method of providing such a system.

*Fourth*: The board of supervisors' action creating County Service Area No. 40 was validated by the First Validating Act of 1966.

██    The first line of argument relates to granting the motion for a new trial. The plaintiff in seeking a new trial made the motion on two grounds: (a) the evidence was insufficient to warrant denial of the petition for writ of mandate; and (b) denial of the petition for writ of mandate was against the law. The trial judge granted the motion on October 25, 1966, on both grounds without specification of reasons as required by Code of Civil Procedure, section 657. On November 1, defendants requested the court to prepare, sign, and file its specification of reasons for the order granting plaintiff's motion. The court filed its specification on November 10. The procedural steps prescribed by law for making a motion for new trial were followed and the court's reasons sufficiently specified the grounds for making the order under recent cases discussing the steps required in such matters. (See *Mercer* v. *Perez,* 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315]; *Treber* v. *Superior Court,* 68 Cal.2d 128 [65 Cal.Rptr. 330, 436 P.2d 330]; *In re Berry,* 68 Cal.2d 137 [65 Cal.Rptr. 273, 436 P.2d 273].) However, the specification of reasons given by the trial judge was not filed until *16* days after the original order was made.

The 1965 amendments to Code of Civil Procedure, section 657, provide that when, as here, the order does not contain the reasons, "the court must, within 10 days after filing such order," file a separate specification of reasons in writing. The court in *Treber, supra,* stated at p. 135: "We hold in *Mercer* (*ante,* p. 121 [65 Cal.Rptr. 315, 436 P.2d 315]) that the prescribed 10-day period is a statute of limitations on the authority of the court to act, and that after the expiration of the period the court has no power to add a specification of reasons by a *nunc pro tunc* order or otherwise."

In the *Treber* case, *supra,* the Supreme Court said: ". . . the first paragraph of the 1965 amendments to section 657 places on the trial courts a clear and unmistakable duty to furnish a timely specification of both their grounds and their reasons for granting a new trial, and we expect that such duty will be faithfully discharged. But in the event of inadequate specification in either respect, the fourth paragraph of the amendments nevertheless requires that the new trial order be affirmed on appeal if it should have been granted on any ground stated in the motion, except insufficiency of the evidence or excessive or inadequate damages. There is no conflict in these provisions; different legislative purposes are

served by each, and both must be given the fullest effect possible.''

Thus, in the present case, no specification of reasons for granting the motion for new trial was filed within the 10-day period. The trial court, however, granted plaintiff's motion for a new trial on both the grounds urged. ▮▮▮ It is clear that a motion for new trial may be granted upon an issue of law alone. (*Greene* v. *Superior Court,* 55 Cal.2d 403, 405-406 [10 Cal.Rptr. 817, 359 P.2d 249]; *Yarrow* v. *State of California,* 53 Cal.2d 427, 439-440 [2 Cal.Rptr. 137, 348 P.2d 687]; *Carney* v. *Simmonds,* 49 Cal.2d 84, 90-91 [315 P.2d 305]; *Thompson* v. *Guyer-Hays,* 207 Cal.App.2d 366, 374 [24 Cal. Rptr. 461].) ▮▮▮ Since the specification of reasons with respect to insufficiency of the evidence was not filed within the required 10-day period, we have not considered that ground in passing upon this appeal. In view of the rule set down in the quoted portion of the *Treber* opinion, *supra,* we hold the trial court followed proper procedure in granting a new trial because its decision was against the law.[1] We will examine the merits of defendants' three remaining contentions.

▮▮▮ The second argument of defendants is that the County Service Area Law provides authority for acquisition, maintenance and operation of a television translator station. The state Legislature, in order to provide for the growing needs of development in unincorporated areas of the state, enacted the County Service Area Law. (Gov. Code, §§ 25210.1 et seq.) Section 25210.4 thereof grants to board of supervisors the following powers: ''A county service area may be established

---

[1]The trial judge specified the grounds on which he felt the decision was against the law:

''The denial of the petition for writ of mandate is against law, for the following reasons:

''(a) A County Service Area may not be established for the purpose of acquiring, maintaining and/or operating a television translator under the County Service Area law;

''(b) There is no independent statutory or other authority for the acquisition, maintenance and/or operation of a television translator by a County Board of Supervisors or by a County Service Area;

''(c) The purpose of a County Service Area is invalid unless express statutory authority exists for the accomplishment of its purposes or such authority is to be necessarily implied from express statutory provisions; no such express grant or necessary implication exists with respect to the purposes of County Service Area No. 40 and therefore it is invalid.

''(d) The purported creation of County Service Area No. 40 was not validated by the First Validating Act of 1966; and

''(e) Government Code Section 53066 provides the sole means by which County Boards of Supervisors may make television service available to the public.''

under this chapter to provide any one or more of the following types of extended service within such area:

" (a) Extended police protection.

" (b) Structural fire protection.

" (c) *Local park, recreation or parkway facilities and services.*

" (d) *Any other governmental services, hereinafter referred to as miscellaneous extended services, which the county is authorized by law to perform* and which the county does not also perform on a county-wide basis both within and without cities, if:

" (1) The board of supervisors determines that such services should be provided on an extended basis within a county service area; or

" (2) Such services are specified in a request or a petition for the initiation of proceedings for the formation of a county service area or in a request or a petition for the initiation of proceedings for the furnishing of additional types of services within a county service area.

" (e) Extended library facilities and services.

"At the time of the adoption of the resolution of intention to establish a county service area the board of supervisors shall specify the type or types of services which are proposed to be provided within the area pursuant to this chapter." [Italics added.]

Defendants contend television rebroadcasting is a "local recreation facility or service," within the meaning of section 25210.4, subdivision (c) of the Government Code. Government Code, section 25210.61 defines those terms as follows: "A local park, recreation or parkway facility as those terms are used in this chapter mean and refer to those parks, recreation or parkway facilities which the board of supervisors determines are maintained primarily for the benefit of and are used primarily by residents within the county service area."

It is also defendants' position that there is additional authority for the action of the board of supervisors under provisions of section 25210.4, subdivision (d), Government Code, *supra,* relative to the types of extended service which can be supplied, and that the County Service Area Law provides an alternative method of providing governmental services to unincorporated areas. (Gov. Code, § 25210.3.)

█ Defendants urge the reviewing court to be liberal in considering the purpose of the Legislature; significance should be given to every word, phrase, sentence and part of

the law. (*People* v. *Western Airlines, Inc.*, 42 Cal.2d 621, 638 [268 P.2d 723] ; *Pepper* v. *Board of Directors,* 162 Cal.App.2d 1, 4 [327 P.2d 928] ; *Estate of Wilcox,* 68 Cal.App.2d 780, 784 [158 P.2d 32].) The declaration of purpose of the statute herein provides in its first section that "The residents and property owners of such areas are entitled to have made available to them reasonable alternative methods of providing or securing the extended services they require and to choose among the alternatives a method best suited to their local circumstances." (Gov. Code, § 25210.1.) ▮ Where the terms of a statute are ambiguous, doubtful, or susceptible of different constructions, liberty of construction is justified, within a fair interpretation of its language, to accomplish its apparent objects and purposes. (*City of Signal Hill* v. *County of Los Angeles,* 196 Cal. 161, 166 [236 P. 304].)

▮ Defendants do not contend that there is *express* independent statutory authority for acquisition, maintenance or operation of a television translator station. They maintain that such authority, *by implication, is necessary* for the full discharge of the duties of the Board as the legislative arm of county government.

▮ Counties under the scheme of California government are "mere subdivisions of the State." (Cal. Const., art XI, § 1.) Their powers are statutory; they are not municipal corporations. These powers have been held limited to those expressly set out in the statutes and those necessarily implied therefrom. (*Southern Cal. Utilities, Inc.* v. *City of Huntington Park* (9th Cir. 1929) 32 F.2d 868, *cert. den.* 280 U.S. 587 [74 L.Ed.636, 50 S.Ct. 36] ; *County of Marin* v. *Superior Court,* 53 Cal.2d 633, 638-639 [2 Cal.Rptr. 758, 349 P.2d 526] ; *County of Los Angeles* v. *Riley,* 6 Cal.2d 625. 627 [59 P.2d 139, 106 A.L.R. 903] ; *People* ex rel. *Graves* v. *McFadden,* 81 Cal. 489 [22 P.2d 851, 15 Am.St.Rep. 66] ; *People* ex rel. *Moore & Domingos* v. *Board of Supervisors of Sacramento County,* 45 Cal. 692; *County of Los Angeles* v. *City of Los Angeles,* 212 Cal.App.2d 160, 164-165 [28 Cal.Rptr. 32] ; *San Vicente Nursery School* v. *County of Los Angeles,* 147 Cal.App.2d 79 [304 P.2d 837].)

The County Charter of San Bernardino County (Cal.Stats. 1913, ch. 33, pp. 1652-1662, as amended) grants the board of supervisors of the county the powers and duties as are or shall be provided by general laws. (§ 3, p. 1654.)

▮ Liberally construing the words used in the statutory phrase, "local park, recreation or parkway facilities and

services,'' as well as considering the extended services which the county is authorized by law to perform, we hold that these provisions do not cover tax-supported television translator stations. The various governmental services set out in the County Service Area Act are well recognized governmental functions. They encompass fire and police protection, parks and recreation facilities. Libraries were later added by amendment. (Gov. Code, § 25210.4, subd. (e).)

The terms of the act do not contemplate a completely new governmental activity, such as public ownership and operation within the broad spectrum of recreational endeavor. The functions of government authorized by the act are those expressly set forth. They include activities historically governmental in nature; activities consistent with our general scheme of government.

The Legislature of California has not granted to counties the power to own or operate television broadcasting or rebroadcasting facilities. Nor has the Legislature imposed any duties upon counties requiring ownership or operation of such facilities. If any modification of the provisions of the County Service Area Act is to be made, it must be made by the Legislature, not the courts.

It is next contended that because Government Code, section 25351, provides for construction or repair of buildings ''as are necessary to carry out the work of the county government,'' authority might be found therein for acquiring a television translator service. It is argued that the courts have given the term ''building'' a very liberal definition, and such term could well include a television translator service. The Board, by making a legislative finding that such service would primarily benefit residents and taxpayers and thereby serve a public purpose, could acquire, install and maintain a television translator structure.

Government Code, section 25351, refers to a list of various buildings which may be used for public purposes. Among these are hospitals, courthouses, jails, historical museums, aquariums, libraries, art galleries, exposition buildings, stadiums, coliseums, sport arenas or sports pavilions or other buildings for holding sports events, athletic contests and other public meetings. None of these building uses permits counties to provide television translator services. Such a service is not a ''building . . . necessary to carry out the work of the county government.'' (Gov. Code, § 25351.)

An additional argument urged by defendants is that an

opinion of the Attorney General (40 Ops.Cal.Atty.Gen. 25) held that a *public utility district* has authority to acquire a television translator station. The statutes relied upon by the Attorney General were sections 16461 and 16463 of the Public Utilities Code. Examination of those sections clearly establishes that public utility districts were given powers not conferred on boards of supervisors. The sections specifically mention the acquisition of works for supplying ". . . telephone service, or other means of communication."

Defendants contend the case of *County of Los Angeles* v. *Anthony*, 224 Cal.App.2d 103 [36 Cal.Rptr. 308], sustains their position. *Anthony* upheld the power of the County of Los Angeles *to* condemn private property for use as a motion picture and television museum under a statute (Gov. Code, § 25351.3, subd. (a)) which expressly granted such power. No statute exists conferring the power to acquire a television translator service.

A further argument is advanced that the County Service Area Law indirectly authorized the board of supervisors to provide a television translator station because the Board action was legislative in nature and therefore should not be disturbed by the courts. The basis of this reasoning is that generally only those acts which are legislative in nature are subject to referendum; since a referendum election can be held under the County Service Area Act, the action of the Board was legislative in nature.

It has long been the law that courts have inherent authority to determine whether statutes enacted by the Legislature transcend the limits imposed by either federal or state Constitutions. (*Marbury* v. *Madison*, 1 Cranch (U.S.) 137 [2 L.Ed. 60].) This power of the courts to pass on the constitutionality of legislative enactments is not derived from any specific constitutional provision, but is a necessary consequence of our system of government. It is the duty of courts to maintain supremacy of the Constitution. (*Leavitt* v. *Lassen Irr. Co.*, 157 Cal. 82, 92 [106 P. 404, 29 L.R.A. N.S. 213]; *Earle* v. *Board of Education of San Francisco*, 55 Cal. 489, 491.)

The county board of supervisors possesses and can exercise only such powers as are expressly granted it by the Constitution or statutes, together with those powers as arise by necessary implication from those expressly granted. (Cal. Const., art. XI, § 1; art. XI, § 7½, subd. 4; Gov. Code, § 23003; *County of Modoc* v. *Spencer & Raker*, 103 Cal. 498 [37 P.

483].) An argument that the Board can interpret a statute of this state and take action accordingly, thereafter standing immune from review by the judiciary simply because the action taken is claimed to be legislative, is no more than an argument for curtailing the judicial power of review.　　In *Marbury* v. *Madison, supra,* 1 Cranch (US) 137 [2 L.Ed. 60], Mr. Justice Marshall established that if a legislature's act was beyond its granted power, such act was void, and the judiciary was bound to uphold the limited grant of power by disregarding the legislative act. This principle is firmly fixed as a basic tenet of American government. If the board of supervisors is to be granted power to create districts for television translator stations, the state Legislature should make such grant in specific terms.

A third contention of defendants is that Government Code, section 53066, providing that counties may license or franchise construction of community television antenna systems, is not an exclusive method of creating television services. In the trial court's specification of reasons for granting the motion for new trial, the court stated that denial of the petition for writ of mandate was against the law because: ''(e) Government Code Section 53066 provides the sole means by which County Boards of Supervisors may make television service available to the public.''

Defendants argue that if the Legislature had intended the provisions of Government Code, section 53066, to be the exclusive method of providing community television antenna service, it would have been so stated in the enabling act. Defendants contend if any inference can be drawn from the provisions of the section, such inference should be that television service is a public service which a county may itself provide or, in proper circumstances, establish by franchise to a private concern.

Such argument is unconvincing. Because a county may franchise or license a community television antenna system, which operates by cable for pay, does not authorize the county to provide a tax-supported television translator system. Nor does it mean the county can act in a proprietary capacity and provide the service directly. Counties are creatures of statute and exercise only those powers expressly granted by statute. (*H. D. Haley & Co.* v. *McVay,* 70 Cal.App. 438 [233 P. 409] ; 36 Ops. Cal.Atty.Gen. 314.)

The record here discloses that during the 1963 California legislative session Senate Bill No. 827 attempted adding pro-

visions to the Public Utility Code authorizing the formation of districts to provide television translator signals. This bill failed of passage. The Legislature in the same session adopted section 53066, Government Code, authorizing the franchising or licensing of community television antenna systems. Patently, this code section does not authorize counties or other governmental agencies to acquire, own or operate television translator stations. No statutory authorities, other than Government Code, section 53066, and Public Utility District Act, section 16461, have been cited.

The final argument advanced by defendants is that the Board action here questioned was validated by passage of the First Validating Act of 1966. The trial court was informed of the Validating Act (A. B. No. 6, 1966 First Extra Sess., ch. 3), enacted and effective March 11, 1966, and heard argument that this statute gave legal force to the County Service Area under consideration.

An examination of the statute shows it defines public body to include only those entities which are specifically enumerated in the section; County Service Areas are not included. Thus, the boundaries or organization of the County Service Area in question would not be validated by sections 2 and 3 of the act. Sections 4 and 5 of the act deal with bond authorizations and annexation and are irrelevant to the present case.

Section 6(a) of the act provides as follows: ''The foregoing provisions of this act shall operate to supply such legislative authorization as may be necessary to validate any such acts and proceedings heretofore taken which the Legislature could have supplied or provided for in the law under which such acts or proceedings were taken.''

This section itself refers to ''the foregoing provisions of this Act.'' Those provisions do not apply to this case. Section 6(a) is not an independent validating provision, but limits its validating effect to preceding sections which are the operative provisions of the act. Nor are three other subsections of section 6 applicable.

Section 7 provides a six-month period of statute of limitations for contesting the validity of the formation, organization or incorporation of any public body not effectively validated by prior provisions of the act. Section 7 applicability is limited to those proceedings described in sections 2 through 5 of the act. Thus, it appears that the Validating Act of 1966 does not validate the creation of County Service Area No. 40.

The trial court properly determined that a new trial

should be granted because denial of the petition for writ of mandate was against the law. The fact that the order did not set forth specifications of insufficiency of the evidence will not support reversal where the decision was correctly made on another and proper ground.

The County Service Area Law does not provide express or implied authority for the acquisition, maintenance and operation of a television translator station. Nor may a County Service Area be established to provide television translator service under the authority to provide for miscellaneous governmental services "which the county is [otherwise] authorized by law to perform." The acquisition of a translator station cannot be authorized under the power to "construct . . . buildings necessary to the work of county government." Nor may it be done because self-governing public utility districts can operate such translators. Nor may the creation of a television translator be justified on the basis of providing "park, recreational or parkway facilities and services." Specific legislative authorization is needed.

No abuse of discretion having been shown, the order granting a new trial is affirmed.

Since the order granting the new trial is affirmed, no consideration need be given the merits of the cross-appeal. That appeal will be ordered dismissed.

Kerrigan, Acting P. J., and Tamura, J., concurred.

The petition of the defendants and appellants for a hearing by the Supreme Court was denied July 10, 1968. Traynor, C. J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.