TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-323 |
| of | : | |
| | : | November 8, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| MAXINE P. CUTLER | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE DENIS A. EYMIL, COUNTY COUNSEL, KINGS COUNTY, has requested an opinion on the following question:

May a member of a county board of supervisors simultaneously serve as a member of the Board of Governors of the California Community Colleges?

CONCLUSION

A member of a county board of supervisors may not simultaneously serve as a member of the Board of Governors of the California Community Colleges.

ANALYSIS

We are asked to determine whether the common law prohibition against a person simultaneously holding "incompatible offices," applicable in California (*Mott* v. *Horstmann* (1950) 36 Cal.2d 388, 391; *People ex rel. Chapman* v. *Rapsey* (1940) 16 Cal.2d 636, 644), precludes a member of a county board of supervisors from serving on the Board of Governors of the California Community Colleges ("Board of Governors"). We conclude that these offices are incompatible, and thus a person may not serve in both capacities at the same time.

Initially we note that no constitutional or statutory provision prohibits an individual from simultaneously serving as a county supervisor and Board of Governors member. With respect to

the common law prohibition, we summarized the principles governing its application in 66 Ops.Cal.Atty.Gen. 176, 177-178 (1983) as follows:

"`Offices are incompatible, in the absence of statutes suggesting a contrary result, if there is any significant clash of duties or loyalties between the offices, if the dual office holding would be improper for reasons of public policy, or if either officer exercises a supervisory, auditory, or removal power over the other.' (38 Ops.Cal.Atty.Gen. 113 (1961).)

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"The policy set forth in *People ex rel Chapman* v. *Rapsey, supra*, 16 Cal.2d 636 comprehends prospective as well as present clashes of duties and loyalties.  (See 63 Ops.Cal.Atty.Gen. 623, supra.)

"`. . . Neither is it pertinent to say that the conflict in duties may never arise, it is enough that it may, in the regular operation of the statutory plan . . . .' (3 McQuillin, Municipal Corporations (3d Ed. 1973, § 12.67, p. 297.)

"`[O]nly one significant clash of duties and loyalties is required to make . . . offices incompatible. . . .'  (37 Ops.Cal.Atty.Gen. 21, 22 (1961).)  Furthermore, `[t]he existence of devices to avoid . . . [conflicts] neither changes the nature of the potential conflicts nor provides assurance that they would be employed.  (38 Ops.Cal.Atty.Gen. 121, 125 (1961).)  Accordingly, the ability to abstain when a conflict arises will not excuse the incompatibility or obviate the effects of the doctrine.  A public officer who enters upon the duties of a second office automatically vacates the first office if the two are incompatible.  (*People ex rel Chapman* v. *Rapsey, supra*, 16 Cal.2d 636, 644.) Both positions, however, must be offices.  If one or both of the positions is a mere employment as opposed to a public office, the doctrine does not apply.  (See 58 Ops.Cal.Atty.Gen. 109, 111 (1975).)'"

As stated in the leading case of *People ex rel. Chapman* v. *Rapsey, supra*, 16 Cal.2d at 642:

"`. . . The inconsistency, which at common law makes offices incompatible, does not consist in the physical impossibility to discharge the duties of both offices, but lies rather in a conflict of interest, as where one is subordinate to the other and subject in some degree to the supervisory power of its incumbent, or where the incumbent of one of the offices has the power to remove the incumbent of the other or to audit the accounts of the other.' In State v. Jones, 130 Wis. 572[110 N.W. 431, 118 Am.St.Rep.1042, 10 Ann.Cas.696, 8 L.R.A. (N.S.) 1107], the Court said:

"`It is not an essential element of incompatibility at common law that the clash of duty should exist in all or in the greater part of the official functions.  If one office is superior to the other in some of its principal or important duties, so that the exercise of

such duties might conflict, to the public detriment, with the exercise of other important duties in the subordinate office, then the offices are incompatible . . .'"

Applying these principles, we find that a county supervisor and a Board of Governors member holds "public office" (see Gov. Code, § 24000, subd. (o); *People* v. *Elliot* (1953) 115 Cal.App.2d 410, 415; *People* v. *Darby* (1952) 114 Cal.App.2d 412, 422-423) for purposes of the incompatible offices prohibition. Hence the issue to be resolved is whether the offices are incompatible--whether the functions and duties of the two offices might produce a significant clash of loyalties, if the dual office holding would be improper for reasons of public policy, or if either office exercises a supervisory, auditory, or removal power over the other.

1. Board of Governors

The California Community Colleges are a postsecondary education system consisting of community college districts. (Ed. Code, § 70900.)[1] The Board of Governors is comprised of 13 members appointed by the Governor with the advice and consent of the Senate. The general duties of the Board of Governors are specified in section 70901:

"(a) The Board of Governors of the California Community Colleges shall provide leadership and direction in the continuing development of the California Community Colleges as an integral part and effective element in the structure of public higher education in the state. The work of the board of governors shall at all times be directed to maintaining and continuing, to the maximum degree permissible, local authority and control in the administration of the California Community Colleges.

"(b) Subject to, and in furtherance of, subdivision (a), and in consultation with community college districts and other interested parties as specified in subdivision (e), the board of governors shall provide general supervision over community college districts, and shall, in furtherance thereof, perform the following functions:

"(1) Establish minimum standards as required by law, including, but not limited to, the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(C) Minimum standards for the formation of community colleges and districts.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(2) Evaluate and issue annual reports on the fiscal and educational effectiveness of community college districts according to outcome measures

---

[1] All unidentified section references are to the Education Code unless otherwise indicated.

cooperatively developed with those districts, and provide assistance when districts encounter severe management difficulties.

"........................................................

"(4) Provide representation, advocacy, and accountability for the California Community Colleges before state and national legislative and executive agencies.

"(5) Administer state support programs, both operational and capital outlay, and those federally supported programs for which the board of governors has responsibility pursuant to state or federal law.  In so doing, the board of governors shall do the following:

"(A) Annually prepare and adopt a proposed budget for the California Community Colleges. . . .

"........................................................

"(C) Establish space and utilization standards for facility planning in order to determine eligibility for state funds for construction purposes.

"(6) Establish minimum conditions entitling districts to receive state aid for support of community colleges.  In so doing, the board of governors shall establish and carry out a periodic review of each community college district to determine whether it has met the minimum conditions prescribed by the board of governors.

"(7) Coordinate and encourage interdistrict, regional, and statewide development of community college programs, facilities, and services.

"........................................................

"(9) Review and approve comprehensive plans for each community college district.  The plans shall be submitted to the board of governors by the governing board of each community college district.

"........................................................

"(11) Exercise general supervision over the formation of new community college districts and reorganization of existing community college districts, including the approval or disapproval of plans therefor.

"........................................................

"(13) Establish policies regarding interdistrict attendance of students."

2. Community College District Boards

Community colleges are established within community college districts, which are governed by district governing boards. (See Cal. Const., art. IX, § 14; §§ 70902, 72000-74290.) The general duties of the district boards are specified in section 70902:

"(a) Every community college district shall be under the control of a board of trustees, which is referred to herein as the `governing board.' The governing board of each community college district shall establish, maintain, operate, and govern one or more community college in accordance with law. In so doing, the governing board may initiate and carry on any program, activity, or may otherwise act in any manner that is not in conflict with the purpose for which community college districts are established.

"The governing board of each community college district shall establish rules and regulations not inconsistent with the regulations of the board of governors and the laws of this state for the government and operation of one or more community colleges in the district.

"(b) In furtherance of the provisions of subdivision (a), the governing board of each community college district shall do all of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(5) To the extent authorized by law, determine and control the district's operational and capital outlay budgets. The district governing board shall determine the need for elections for override tax levies and bond measures and request that those elections be called.

"(6) Manage and control district property. The governing board may contract for the procurement of goods and services as authorized by law.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(13) Hold and convey property for the use and benefit of the district. The governing board may acquire by eminent domain any property necessary to carry out the powers or functions of the district.

"(14) Participate in the consultation process established by the board of governors for the development and review of policy proposals."

In addition, the district boards have specified responsibilities regarding the transfer of territory from one district to another (§§ 74100-74110), the annexation of an existing community college district (§§ 74130-74140), and the formation of a new community college district (§§ 74150-74159).

3.  County Boards of Supervisors

A county board of supervisors exercises the general legislative authority of the county. (See Cal. Const., art. XI, § 7; Gov. Code, §§ 25000-26400; *Byers* v. *Board of Supervisors* (1968) 262 Cal.App.2d 148, 157; 77 Ops.Cal.Atty.Gen. 82, 83-84 (1994).)  With specific regard to community college districts, a county board of supervisors may correct and relocate district boundaries in various situations.  (§ 2600.)  The board of supervisors must approve district board elections under certain conditions (§ 5010.7) and determine the rate of taxation to be levied on the property situated in the district (§§ 14220, 14221, 14222).

Bonds of a community college district may be issued and offered for sale by the board of supervisors of the county.  (§ 15140.)  The board of supervisors may sell the bonds at a negotiated sale or by competitive bidding (§ 15146) and may cancel unsold bonds if it deems cancellation to be in the best interests of the district (§ 15203).

The county board of supervisors may make a temporary transfer of county funds to a community college district that does not have sufficient money to meet current maintenance expenses. (§ 85220.)  It must approve the sale or lease of any building of the district under specified conditions. (§ 81380.)

4.  Clashes of Duties and Loyalties

We have previously found public offices to be incompatible in a variety of circumstances involving a clash of duties and loyalties.  (See, e.g., 76 Ops.Cal.Atty.Gen. 38 (1993) [fire chief and fire protection district director]; 74 Ops.Cal.Atty.Gen. 116 (1991) [county superintendent of schools and State Board of Education member]; 67 Ops.Cal.Atty. Gen. 409 (1984) [general manager of county water district and county supervisor]; 64 Ops. Cal.Atty.Gen. 137 (1981) [public utility district director and county supervisor].)

While the Board of Governors does not directly interact with county boards of supervisors, it does have a supervisory and auditory relationship with community college districts.  A county board of supervisors also has a supervisory role with respect to all community college districts in the county, but the duty is performed with a local perspective rather than a statewide perspective.

What may be in the best interests of the Board of Governors may not be in the best interests of a county regarding community college district finances (§§ 14220-14222, 70901, subd. (b)(5)(A), 85220), use of district property (§§ 70901, subd. (b)(5)(C), 81380), location of district boundaries (§§ 2600, 70901, subd. (b)(11)) district board elections (§§ 5010.7, 70901, subd. (b)(2)), and the issuance of district bonds (§§ 15140, 15146, 15203, 70901, subd. (b)(9)).  When the Legislature is determining whether to fund community college programs or to fund county programs, a Board of Governors member and a county supervisor will have different interests to assert.  Similarly, when the Legislature is determining whether to allow counties to impose charges upon community college districts, such as a  property tax collection fee, a county supervisor serving as a Board of Governors member would have a conflict of loyalties.  In short, both the Board of Governors and a county board of supervisors have advocacy and supervisorial duties with respect to a community

college district. Having the same person performing each role would inevitably lead to divided loyalties. "`[O]nly one significant clash of duties and loyalties is required to make . . . offices incompatible. . . .' [Citation.]" (66 Ops.Cal.Atty.Gen., *supra*, at 177.)

We conclude that a county supervisor may not simultaneously serve on the Board of Governors of the California Community Colleges.

* * * * *