BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
LAWRENCE RAY and SANDI RAY have requested leave to sue in quo warranto upon the following question:
Is Willy K. Hagge unlawfully holding the office of director of the Hot Spring Valley Irrigation District because he simultaneously holds the office of member of the Modoc County Board of Supervisors?
 CONCLUSION
Whether Willy K. Hagge is unlawfully holding the office of director of the Hot Spring Valley Irrigation District because he simultaneously holds the office of member of the Modoc County Board of Supervisors presents substantial issues of fact and law requiring judicial resolution.
 ANALYSIS
Lawrence Ray and Sandi Ray ("Relators") allege that Willy K. Hagge ("Defendant") holds two public offices simultaneously in violation of the common law rule, applicable in California (Civ. Code, § 22.2; Mott v. Horstmann (1950) 36 Cal.2d 388, 391-392; People ex rel. Chapman v. Rapsey (1940) 16 Cal.2d 636, 640-644; Eldridge v. Sierra View Local Hospital Dist. (1990) 224 Cal.App.3d 311, 319), prohibiting the holding of incompatible public offices. Since the two offices, director of the Hot Springs Valley Irrigation District ("District") and member of the Board of Supervisors of Modoc County ("County"), are clearly "public offices" for purposes of the common law rule (see, e.g., 78 Ops.Cal.Atty.Gen. 316, 318 (1995) [county supervisor]; 76 Ops.Cal.Atty.Gen. 81, 83-84 (1993) [irrigation district director]), the issue is whether the offices are "incompatible" when held by the same person. If they are, Defendant would retain the last office to which he has taken the oath of office, while the other office would be forfeited. (See 82 Ops.Cal.Atty.Gen. 68, 73 (1999); 41 Ops.Cal.Atty.Gen. 98, 99 (1963).)
On December 3, 2000, Defendant took the oath of office for his culTent term as a director of the District. On January 8, 2001, Defendant took the oath of office for his current term as a County supervisor. The District's territory lies entirely within the boundaries of the County.
The common law doctrine of incompatible public offices prohibits a person from holding two public offices at the same time if the performance of the duties of either office could have a significant adverse effect on the other. (85 Ops.Cal.Atty.Gen. 239, 240 (2002); 80 Ops.Cal.Atty.Gen. 74, 75 (1997); 66 Ops.Cal.Atty.Gen. 176, 177-178 (1983).) In 85 Ops.Cal.Atty.Gen. 60, 61 (2002), we observed:
Offices are incompatible if one of the offices has supervisory, auditory, or removal power over the other or if there would be any significant clash of duties or loyalties in the exercise of official duties. Only one potential significant clash of duties or loyalties is necessary to make offices incompatible. If the performance of the duties of either office could have an adverse effect on the other, the doctrine precludes acceptance of the second office. If the second office is accepted, such acceptance constitutes an automatic resignation from the first office. [Citations.]"
We have previously concluded that the office of county supervisor is incompatible with a variety of other local public offices. (See, e.g., 78 Ops.Cal.Atty.Gen. 316, supra [community college board member]; 64 Ops.Cal.Atty.Gen. 137 (1981) [public utilities district board member]; 37 Ops.Cal.Atty.Gen. 146 (1961) [soil conservation district board member]; 30 Ops.Cal.Atty.Gen. 184 (1957) [transit district board member]; 15 Ops.Cal.Atty.Gen. 265 (1950) [hospital district board member]. Of particular relevance here is our discussion in 67 Ops.Cal.Atty.Gen. 409, 414 (1984), where we explained why the offices of county supervisor and general manager of a county water district were incompatible:
"The Legislature has provided numerous specific ties between the governing of a county water district and the governing of a county. The board of supervisors of a county generally fills any vacancies on the board of directors of a district [citation], initiates preliminary proceedings in the organization and reorganization of a district [citation], initiates, conducts proceedings, and orders the consolidation of districts [citation], and may allocate special funds to a district [citation]. The county and the district may contract concerning property owned by either party [citation], the county may perform services for a district [citation], the county may transfer property to a district [citation], the district may furnish water to the county [citation], and both parties may jointly exercise any power common to each [citation]. A county supervisor may also have divided loyalties when adopting general and specific plans and amendments thereto for areas served by the water district. [Citation.]
"In each of the above situations, what is best for the county may not be what is best for the water district. As the chief executive officer of the district, a county supervisor would be subject to contrary and inconsistent considerations in determining what constitutes the "public interest.' [Citations.]"
A county board of supervisors exercises the general legislative authority of the county. (See Cal. Const., art XI, § 7; Gov. Code, §§ 25000-26400; Byers v. Board of Supervisors (1968)262 Cal.App.2d 148, 157; 77 Ops.Cal.Atty.Gen. 82, 83-84 (1994).) The board's supervisory and auditory powers are set forth in Government Code section 25303, which provides in part:
"The board of supervisors shall supervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county, and particularly insofar as the functions and duties of such county officers and officers of all districts and subdivisions of the county relate to the assessing, collecting, safekeeping, management, or disbursement of public funds. It shall see that they faithfully perform their duties, direct prosecutions for delinquencies, and when necessary, require them to renew their official bond, make reports and present their books and accounts for inspection."
A county board of supervisors has specific authority with respect to matters involving water supplies within the county. Government Code section 25690 provides:
 "The board of supervisors may acquire, develop, distribute, and sell water to the county and its inhabitants for domestic, irrigation, agricultural, and other beneficial uses."
A board of supervisors is empowered to "appropriate and expend money from the general fund of the county" for flood control projects and for the conservation of flood waters. (Gov. Code, § 25680.)
Irrigation districts are formed under the Irrigation District Law (Wat. Code, §§ 20500-29978) and are generally governed by a five-member board of directors (Wat. Code, § 21550). They have the authority to "develop, preserve, and conserve water for the beneficial use of inhabitants of the district. . . ." (City of Modesto v. Modesto Irrigation Dist. (1973) 34 Cal.App.3d 504, 507; see Wat. Code, §§ 22075-22078). They may provide for drainage (Wat. Code, § 22095), sewage disposal (Wat. Code, § 22170), flood control (Wat. Code, § 22160), and recreational facilities (Wat. Code, § 22185), and may acquire and operate plants to generate electrical power (Wat. Code, § 22115). They have the power to levy and collect assessments on land within their boundaries for costs associated with their operations. (Wat. Code, §§ 25502,26502.)
The Legislature has provided several specific statutory ties between county boards of supervisors and irrigation districts. A petition to form an irrigation district is initially presented to the board of supervisors, which is charged with determining the petition's compliance with state requirements, confirming the purposes for the proposed district, conducting a formation election, and entering a final formation order upon approval by a majority of voters. (Wat. Code, §§ 20720-20963.) The board of supervisors is directed to "fill by appointment" any vacancy in the office of irrigation district director (Wat. Code, § 21265) and is authorized to appoint persons to vacancies in the offices of district assessor, district collector, and district treasurer if a district's directors do not do so within 40 days following occurrence of the vacancies (Wat. Code, § 21266). If a district's collectors neglect or refuse to collect, account for, deposit, or disburse assessments, the board of supervisors and county officers are required to perform those duties. (Wat. Code, § § 26525-26553.) An irrigation district board may contract with the board of supervisors to eliminate the positions of district assessor and district collector and transfer those duties to the county assessor and county tax collector. (Wat. Code, §§ 26600-26606.)
Significantly, a county may wish to contract with an irrigation district to obtain water, electrical power, or flood control services.[1]
Additionally, an irrigation district may be subject to county approval before constructing a building project, and the county may need an irrigation district's agreement before putting its development plans into effect.
In light of these relationships, overlapping powers, and potential conflicts between a county board of supervisors and an irrigation district board of directors, we find that the question whether Defendant is unlawfully holding the office of director of the District presents substantial issues of fact and law requiring judicial resolution. (See 76 Ops.Cal.Atty.Gen., supra, at p. 85; 75 Ops.Cal.Atty.Gen., supra, at pp. 13-14; 73 Ops.Cal.Atty.Gen. 183, 188 (1990); 67 Ops.Cal.Atty.Gen., supra, at p. 414.)[2]
Finally, we note that on occasion we have denied applications for leave to sue in quo warranto where the filing of the action would not serve the overall public interest. (See 86 Ops.Cal.Atty.Gen. 76, 79 (2003) [issue already pending in another action]; 82 Ops.Cal.Atty.Gen. 6, 11 (1999) [short period of time remaining in term of office]; 67 Ops.Cal.Atty.Gen. 151, 161 (1984) [qualification for office obtained after appointment]; 36 Ops.Cal.Atty.Gen. 317, 320 (1960) [issue resolved through intervening election].) Defendant asserts that granting Relators' application would not be in the public interest because Relators have improper, private motives for filing their application. However, "[w]e normally do not attempt to assess the motivation of individual relators." (75 Ops.Cal.Atty.Gen., supra, at p. 116.) Regardless of Relators' purposes in filing their application, we are concerned with ensuring that all public officials have undivided loyalties when performing their public duties. (City of Campbell v. Mosk (1961) 197 Cal.App.2d 640, 648-650; see also, 82 Ops.Cal.Atty.Gen. 74, 77 (1999); 76 Ops.Cal.Atty.Gen. 1, 4 (1993); 76 Ops.Cal.Atty.Gen. 38, 44 (1993); 75 Ops.Cal.Atty.Gen., supra, at p. 117.)
Accordingly, Relators' application for leave to file an action in quo warranto is GRANTED.
[1] We have determined that the powers of water service agencies to fix rates and collect charges for water and services to a city (75 Ops.Cal.Atty.Gen., 10, 14 (1992)) and to a school district (73 Ops.Cal.Atty.Gen. 183, 186 (1990)) are significant factors in finding an incompatibility of public offices.
[2] Whether an actual conflict in duties has previously occurred in the two offices is not determinative since it is sufficient that a conflict may occur "`in the regular operation of the statutory plan.'" (66 Ops.Cal.Atty.Gen., supra, at p. 177; see 75 Ops.Cal.Atty.Gen. 112, 116 (1992).)